# Farner *v.* Massachusetts Mutual Accident Association, Appellant.

*Insurance—Accident insurance—Bite of dog.*

A bite of a dog is an accident, and should be classed under the "accident provisions," and not under the "health provisions," of an accident insurance policy.

A person who is bitten in the thumb by a dog, and whose hand is bandaged at once, and the use of the hand is interfered with thereby from the moment of the bite, and continues to be more and more so, with increasing pain until death ensues two weeks later, is "immediately disabled," within the meaning of those words in an accident insurance policy.

Argued June 3, 1907.   Appeal, No. 1, May T., 1907, by defendant, from judgment of C. P. Dauphin Co., Jan. T., 1905, No. 316, on verdict for plaintiff in case of Mary Farner v. Massachusetts Mutual Accident Association.   Before MITCHELL, C. J., FELL, BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit on a policy of accident insurance.   Before KUNKEL, P. J.

At the trial the jury returned a verdict for the plaintiff for $2,056.60.   On a motion for judgment for defendant non obstante veredicto KUNKEL, P. J., filed the following opinion:

The question which arises under the reservation made at the trial of this case is whether the policy upon which the action is brought covers the death of the insured.

The circumstances under which the insured's death occurred are not in dispute and are as follows: On May 15, 1904, while he was sitting in front of his hotel holding a little dog on his lap, someone came behind him and pinched the dog's tail, whereupon the dog snapped and bit the insured on his thumb, from the effects of which, two weeks thereafter, he died.

The policy under which his widow, the beneficiary, seeks to recover, contains two kinds of insurance, one against accidents, the other against disease or sickness.   The part which relates to accident provides insurance " for loss through personal bodily injuries caused solely through accidents, unforeseen and unintentional, due wholly to violent means external to the body, and such as shall be evidenced (except in case of drowning or bone fracture) by some sign or mark on the exterior of his body, visible to the eye, and such as shall immediately and continuously disable the insured from the date of the accident, and such as are not caused or contributed to by any deformity or disease; and in case of such loss will pay, under this policy, one of the following benefits, to wit: Benefit No. 1, $2,000 for loss of life caused solely by an accident herein insured against and occurring within thirty days from the date of such accident," etc.   The verdict of the jury has established the fact that the character of the injury suffered by the insured was such as is described by the provisions of the policy just quoted.

The part of the policy which relates to health provides, among other things, as follows : Benefit No. 13, $10.00 weekly indemnity for not exceeding twenty-six consecutive weeks for loss through any of the sicknesses or diseases under this benefit, as follows." Then follows a list of diseases. Benefit No. 14 provides for " Weekly indemnity for loss through any well defined disease or sickness other than those specified in Benefit No. 13 (except as hereinafter excepted) for not exceeding four consecutive weeks."

The provision in the policy over which this controversy arises is article eight, which declares " that all cases of sunstroke, freezing, carbuncles, boils, ulcers, felons, abscesses, contact with poison, or with poisonous or infectious substances, are covered only under the health provisions of this policy."

The defendant contends that the death of the insured, being due to inoculation with some poison-generating germ from the dog's saliva, or from its tooth, or from its mouth, or from the insured's thumb, presents a case of contact with poison, or with a poisonous or infectious substance, within the meaning of article eight, and, therefore, no recovery can be had under the accident provisions of the policy.

Even if it be conceded that the death of the insured was caused by some poisonous germ received into his body through the bite of the dog, yet it does not follow that the case falls within the provisions of article eight. The language of the article must be taken in its usual and ordinary sense, and must be given such interpretation as was probably in the contemplation of the parties when the policy was issued. " A contract of insurance must have a reasonable interpretation such as was probably in the contemplation of the parties when it was made : " Grandin v. Insurance Co., 107 Pa. 26 ; Humphreys v. Benefit Association, 139 Pa. 214. In order to defeat a recovery upon it, the meaning of the provision which purports to effect this object ought to be clear. If the provision be ambiguous, that interpretation should be adopted which will conserve the purpose for which the policy was given : Teutonia Fire Insurance Co. v. Mund, 102 Pa. 89 ; Burkhard v. Insurance Co., 102 Pa. 262.

Contact with poison, or with poisonous or infectious substances, in the ordinary sense, means contact with corporeal

matter, with that which is substance, as distinguished from that which can neither be seen or handled. Poison, or poisonous or infectious substances also ordinarily mean substances that are in their nature poisonous or infectious, and that are generally recognized and known as such. An infinitesimal poisonous germ, or that which it generates, is not poison as the word is ordinarily understood. Nor is it, or its product, popularly known as a substance. If we were to adopt the scientific or medical meaning of the term, as we are in effect asked to do by the defendant, we would have to hold that everything containing a poisonous generating germ, or an infectious germ, is a poisonous or infectious substance. But in the ordinary use of the language we would not speak of either a liquid or a solid which contains a poisonous or infectious germ as essentially a poisonous or infectious substance. If we did, it would be difficult to mention any substance which cannot be so characterized. There is nothing in the policy to satisfy us that when it was issued, either the insurer or insured was versed in the germ theory, and that either intended the words of article eight to be taken in any other than their common and usual sense. We are not prepared to say that they meant that an accidental death, due to the bite of a dog, or of any other animal, should fall without the accident benefits of the policy. Suppose the insured had been accidentally shot and, as a result of the accident, suffered with blood poisoning from the bullet received into his body and died. It would hardly be said to be a case of contact with poison, or with a poisonous or infectious substance, in the ordinary acceptation of the term. We can see no real distinction between such a case and the one at bar. When we come to interpret insurance policies in the light of advanced medical science, then we may agree with the contention of the defendant. Until then, however, we must interpret them as the terms employed in them are commonly used and understood.

At the trial the defendant offered evidence to show that the insured suffered with septicemia as the result of the dog's bite, septicemia being one of the diseases mentioned in the list under the health provisions of the policy. The plaintiff offered evidence to contradict this and to show that although the insured suffered with what is ordinarily known as blood poison,

he did not suffer with the disease recognized by the medical profession as septicemia, and the jury have found with the plaintiff on this question. However this may be the health provisions of the policy do not provide for any payment in case of death by disease, but only for indemnity during the existence of the disease. The present claim is a claim for the death of the insured, and, if it is covered by the policy, falls within the provisions relating to accidents. The case cannot be excluded from the accident provisions of the policy, if the injury is of the character described therein and is the proximate cause of the death, merely because the injury is accompanied by a disease or sickness mentioned in the health provisions of the policy. If excluded at all, it would be excluded because it is a case of contact with poison, of poisonous or infectious substances within the meaning of article eight. But, as we have seen, it is not such a case. The motion for judgment non obstante veredicto is, therefore, overruled, and judgment is directed to be entered on the verdict upon payment of the jury fee.

*Error assigned* amongst others was in overruling defendant's motion for judgment non obstante veredicto.

*John R. Geyer*, with him *John E. Fox*, for appellant, cited: Desilver v. State Mut. Ins. Co., 38 Pa. 130; Ritter v. Preferred Masonic Mut. Accident Assn., 185 Pa. 90; Accident Assn. v. Beidelman, 1 Monaghan, 481; Meehan v. Traders' & Travelers' Accident Co., 68 N. Y. Supp. 821; Pollock v. Accident Assn., 102 Pa. 230; McGlother v. Accident Co., 89 Fed. Repr. 685.

*C. H. Backenstoe* and *Wm. M. Hain*, for appellee, cited: Ritter v. Preferred Masonic Mut. Accident Assn., 185 Pa. 90; Carpenter v. Ins. Co., 135 N. Y. 298 (31 N. E. Repr. 1015); Young v. Ins. Co., 13 Atl. Repr. 896; Wall v. Continental Casualty Co., 86 S. W. Repr. 491; Cary v. Preferred Accident Ins. Co., 127 Wis. 67 (106 N. W. Repr. 1055).

PER CURIAM, June 25, 1907:

The claim of the appellant that the death of the insured

should be classed under the " health provisions" and not under the "accident provisions" of the policy can hardly be made seriously.   The policy was prima facie an accident policy, and the insured died from the bite of a dog, certainly an accident, not a disease.   The proximate cause of death was the bite, and the way in which it operated to produce death, whether by hemorrhage or lockjaw or blood poisoning was a medical detail which did not affect the material fact of death resulting from the accident.

The other argument, that the insured was not "immediately disabled," is not much better.   He was bitten in the thumb, his hand was bandaged at once, and though the gravity of the injury was not at first appreciated, yet the use of his hand was interfered with from the moment and continued to be more and more so, with increasing pain until his death, two weeks later.   There was no break in the continuity of the consequences of the injury, and no intervening cause in the resulting disability.   Immediately, under such circumstances, does not mean instantly :   Ritter v. Accident Association, 185 Pa. 90.

Judgment affirmed.