# Knickerbocker Trust Company, Appellant, *v.* Ryan.

*Bailment—Lease of cars—Rental—Repairs—Covenant.*

1. A lease of cars was for one year with a privilege to the lessees to cancel at the expiration of four months by giving notice. The rental was $5.00 per car per day. The cars were to be returned to the lessors at the expiration of the lease in as good condition as when received, " ordinary wear and tear in the service for which said cars are leased, excepted." Other repairs and replacements were to be made by the lessees. The lessees exercised their option to terminate the lease at the end of four months, and notified the lessors to that effect, stating that the cars would be delivered on a certain day "when rental of same will cease." The lessors insisted on certain repairs being made, and the lessees made the repairs, all of the cars remaining in their possession

in the meantime. In an action to recover rentals for the cars after the date of the tender under a covenant of the lease whereby rentals were to be paid for detention of the cars after the termination of the lease the trial judge charged that if the repairs were merely those made necessary from ordinary wear and tear, the lessees although having made the repairs by mistake would not be liable for the rental. There was evidence that the defects were merely from ordinary wear and tear. *Held,* that a verdict and judgment for defendants should be sustained.

2. It is a rule of universal application that in construing a. contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascertained from the entire instrument. Every sentence and clause in the contract must be considered in arriving at the thought or intention of the parties in making the agreement.

3. In the above case a check was given for rentals due prior to the notice. On its face it was said that it was in full payment of the contract, giving date of contract. This check was given eleven days and appropriated sixteen days after the expiration of the term and ten days after it was agreed the replacements and repairs should be made, and after two of the cars had been received by the lessors for which rentals were sought to be recovered. *Held,* that the check was, in the absence of any explanation by the lessors, evidence tending to show an admission that all the rentals accruing under the contract were paid, including those in suit.

Argued Jan. 5, 1910. Appeal, No. 251, Jan. T., 1909, by plaintiffs, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1906, No. 3,943, on verdict for defendants in case of Knickerbocker Trust Company and William B. Randall, Trustees, v. James J. Ryan and John A. Kelley, Copartners, trading as Ryan and Kelley. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit for rental of cars. Before CARR, J.

The facts are stated in the opinion of the Supreme Court.

At the trial the court admitted under objection and exception, defendant's check for $1,080, dated July 20, 1905.

Plaintiffs presented these points:

1. That the damages sustained by the leased cars while in the defendants' service and which damages were repaired by the defendants after July 9, the date of the expiration of the lease, are not included in the ordinary wear and tear of the cars.

*Answer:* That point is refused. Whether it is ordinary wear and tear is a question of fact for the jury. [1]

4. That inasmuch as the plaintiffs did on June 16, prior to the expiration of the lease, request the defendants to send in an order for parts to be repaired, and that the plaintiffs received no order from the defendants pending the lease, and had no other notice from them or information from any source that an unusual demand would be made for parts, the plaintiffs were not obliged to have on hand ready for immediate delivery, an unusual and unprecedented number of parts to meet the order of the defendants. *Answer:* That point is refused. Whether the number was unusual and unprecedented is a question of fact, as is also the fulfillment of the plaintiffs' obligation to have on hand sufficient supplies, and it is for the jury to decide whether the plaintiffs, having the right of inspection at all times, made every reasonable effort and took every reasonable precaution to keep on hand a sufficient quantity of supplies to fill, within a reasonable time, the orders sent in by the defendants. [8]

8. That under all the evidence, the verdict must be for the plaintiffs. *Answer:* That point is refused. [9]

Defendants presented these points:

1. The claim in suit is for the rental of certain cars leased by the plaintiffs to the defendants under a contract of lease between them dated January 23, 1905. The claim is for rental of the cars after the expiration of the lease on July 9, 1905, during the progress of certain repairs which were being made to the cars. It is the uncontradicted evidence that the defendants paid to the Knickerbocker Trust Company, standing for both plaintiffs, on or about July 20, 1905, after the lease expired, $1,080, by the defendants' check, upon which it was stated that the same was in full payment of contract dated January 23, 1905, and that the said Knickerbocker Trust Company received and used said check without any claim at the time that the same was not in full payment of all claims and demands for rentals under said contract. The said receipt of said check, under the circumstances, is prima facie evidence of full settlement, and satisfaction of all demands by the

plaintiffs against the defendants for rentals under the contract in suit; and the burden is upon the plaintiffs of explaining said receipt, and of showing why it is not controlling against them. *Answer:* That point is affirmed. [12]

2. By the contract in suit the defendants obligated themselves to replace, at their own expense, any and all parts of the cars which might be destroyed during the term of the lease, with like material of equal quality, value, character and construction to the parts destroyed. They at the same time bound themselves, upon the expiration or other termination of the lease, to return the cars in as good condition as when received, ordinary wear and tear in the service for which the cars were leased, excepted. The above provisions of the lease, interpreted in harmony with each other, mean that the defendants were not obliged to make repairs to the cars after the expiration of the lease, if their condition at that time was due to ordinary wear and tear in the service for which said cars were leased; and if any parts of the cars were destroyed during the term of the lease due only to ordinary wear and tear in the service for which the said cars were leased, the defendants were not obliged to replace said parts after the expiration of the lease. If, therefore, the jury believes that, after the expiration of the lease, the cars needed certain replacements of parts destroyed, and certain repairs, but that the necessity for these replacements of parts and these repairs was due only to ordinary wear and tear in the service for which the cars were leased, they will find a verdict for the defendants. *Answer:* That point is affirmed. [13]

Verdict and judgment for defendants. Plaintiffs appealed.

*Errors assigned* among others were (1) admission of check as above; (7, 8, 9, 12, 13) above instructions, quoting them.

*Charles Heebner,* with him *Davies, Stone and Auerbach,* for appellants.—If the lease were silent as to the duty of replacing parts destroyed, it would nevertheless have been error to submit to the jury the question whether destruction of parts was included in ordinary wear and tear: Lehigh Coal & Nav.

Co. v. Harlan, 27 Pa. 429; McArthur v. Tionesta Gas Co., 28 Pa. Superior Ct. 574.

Defendants' check of July 20, 1905, for $1,080, the undisputed amount of rental due at expiration of the lease, delivered in payment of a bill rendered by plaintiffs before expiration, marked, " In full payment under contract," and deposited and used by plaintiffs, is not admissible in evidence as proof of an acquittance by plaintiffs of rentals accruing after expiration of the term: Tucker v. Murray, 2 Pa. Dist. Rep. 497; Ins. Co. v. Canan, 195 Pa. 589; Bernstein v. Hirsch, 33 Pa. Superior Ct. 87.

*A. H. Wintersteen,* for appellees.—The rentals "due" are only those which the lessees were obliged to pay and did not pay; and whether or not the lessees have rendered performance of "other covenants" of the contract, or more particularly, of the covenant for the payment of rentals after termination of the lease, depends upon the meaning of the covenant itself when interpreted with reference to the true meaning of the contract as a whole: Berridge v. Glassey, 112 Pa. 442; Stewart's Administrators v. Lang, 37 Pa. 201; Miller v. Heller, 7 S. & R. 32; Bickford v. Cooper & Co., 41 Pa. 142.

The defendants were under no obligation to pay to the appellants rent for the cars after the expiration of the lease, under the facts in evidence, the essential fact being that at the time of expiration they tendered or offered to return to the appellants the cars in the same condition in which they had been received, wear and tear excepted, and the appellants were in duty bound then to receive the cars, but requested the defendants to hold them. All questions of necessary fact involved were properly submitted to the jury, who found for the defendants.

Under the facts found by the jury, the defendants were not obliged, after the term, to replace the parts of the cars which had been destroyed, or to undertake any repairs at their own expense; and the circumstance that, without any legal obligation to do so, they paid the expense of replacing the parts destroyed and of the repairs, does not justify the appellants'

demand for rental of cars for the period in suit, or involve an admission by the defendants of their liability therefor: Berridge v. Glassey, 112 Pa. 442.

The defendants' check of July 20, 1905, for $1,080, having upon its face the statement that it was "in full payment of contract dated January 23, 1905," was admissible on behalf of the defendants and, when taken in connection with the other evidence in the case, was competent evidence for the jury upon the issue whether the appellants had, at the time the check was received by them, accepted it as in full of all rental claims against the defendants under the contract: Washington, Nat. Gas Co. v. Johnson, 123 Pa. 576; Bernstein v. Hitsch, 33 Pa. Superior Ct. 87.

OPINION BY MR. JUSTICE MESTREZAT, February 21, 1910:

We are not convinced that there is any reversible error in this record. The statement avers that by the contract the lessees agreed "to pay to the lessors the rental of $5.00 per car for each and every day after the said date of July 9, 1905, until said twenty-four cars were returned to the lessors," and that the total number of days for which the twenty-four cars were held after July 9, the expiration of the term, "was equivalent to the detaining of one car for 1,095 days, for each and every of which days the rental of $5.00 was due from the lessees to the lessors under the terms of the lease, as aforesaid, making the total sum due and payable by the lessees to the lessors $5,475." The claim is made under covenant second of the lease and, as will be observed, it is for rentals, and not simply for compensation, for the detention of the cars after the termination of the lease.

It is a rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascertained from the entire instrument. Every sentence and clause in the contract must be considered in arriving at the thought or intention of the parties in making the agreement. Interpreted by this rule, we think the lessees were to make only such replacements and repairs to the cars

as were not caused by the ordinary wear and tear during the continuance of the lease. The cars were to be returned to the lessors at the termination of the lease in as good condition as when received, "ordinary wear and tear in the service for which said cars are leased excepted."

As provided in the contract of January 23, 1905, the cars were delivered to the lessees at Farnhurst, Delaware, and went into the lessees' service on March 10, 1905. The lessees exercised their option to terminate the lease and advised the lessors on May 31, 1905, that the cars would go out of service at the end of four months, and on July 7, by letter and telegram notified the lessors that the cars would go out of service on July 8, "when rental of same will cease," the letter stating that the cars would be delivered to the lessors on the P. W. & B. Railroad tracks at Farnhurst, the place named in the contract for their delivery, "where they will be subject to your orders." The lessors replied to the telegram: "Do not deliver cars to P. W. & B. Hold them for inspection your tracks Farnhurst." At the same time they wrote to the lessees, saying, inter alia: "We have, therefore, to request that you hold the cars on your track at Farnhurst pending the result of the joint inspection, after which we can furnish you shipping instructions." It was agreed that the cars should go out of service on July 9, 1905.

The cars were inspected by the representatives of both parties on July 10 (July 9 being Sunday), and it was agreed that certain repairs and replacements were required to put the cars in condition for delivery to the lessors. The lessees made the repairs and the cars were delivered to the lessors at various dates between July 17 and September 21, 1905.

This suit having been brought, the lessees defended on the ground that they having notified the lessors that the cars would go out of service and the rentals would cease on July 9 and the lease being thereby terminated it was the duty of the lessors to accept the cars; that the replacements and repairs necessary to be made to the cars at the expiration of the lease were those resulting from ordinary wear and tear of the service for which the lessees were not responsible although, by mis-

take, made by them; that the cars were held by the lessees, not under the lease, but under a special agreement, first for inspection and then for repairs, for the lessors' account; and that no life remained in the lessees' obligation to continue to pay rentals after the termination of the lease, once the cars were tendered to the lessors in the condition in which they were to be returned by way of delivery at the place designated in the lease.

The lessors contended that the single issue in the case was whether the lessees were required to pay rent for the leased cars after the expiration of the lease so long as they remained in the possession of the lessees as required in covenant second of the contract, and that the question whether or not the lessees were obliged to make repairs was immaterial and was not an issue in the case. The lessors, the plaintiffs, therefore, claimed they were entitled to binding instructions.

The theory on which the court below tried the cause was that the lessors were required to accept the cars when tendered on July 9, if the repairs were only such as resulted from the ordinary wear and tear while in the lessees' service and, failing to do so, the latter were not responsible for rentals for their detention while the repairs were being made. The court, therefore, submitted to the jury to find the character of the repairs necessary to be made at the termination of the lease on July 9, and instructed them that if they resulted from the ordinary wear and tear of the cars in the lessees' service during the lease there could be no recovery, but that the plaintiffs were entitled to a verdict if the repairs and replacements were such as the lessees were required to make. As said above, covenant second must be construed in connection with the other stipulations in the contract, and when so interpreted the learned trial judge cannot be convicted of error in his view of the agreement. The question of fact was, of course, for the jury, and was properly submitted. Notwithstanding the fact that the lessees made the repairs, there was ample evidence to justify the jury in finding that they were not such as the lessees were required to make under the contract. There was no reason for the lessors refusing to accept the cars on July 9,

unless the lessees had failed to make the repairs required by the contract. The lease was at an end, and the balance of the rentals due on the day the cars went out of service was secure. Under the finding of the jury, the tender of the cars by the lessees should have been accepted by the lessors, and hence the action to recover the rentals for the cars since the expiration of the lease cannot be maintained.

We discover no error in the admission of testimony. It is insisted that the check should not have been admitted in evidence. The bill for the rentals from July 1 to July 9 was rendered June 29, 1905, for $1,080, and was paid by check dated July 20, on the face of which it was stated: "In full payment contract dated January 23, 1905." The bill was returned to the lessees stamped paid as of July 25. The plaintiffs' statement, as noted above, avers that the sum claimed in this action is for "rentals" under the contract, and hence the contract as construed by the plaintiffs does not make the distinction, suggested in the plaintiffs' supplemental brief, between the "rental" to be paid for the use of the cars and the "compensation" to be paid for their detention after the term. The check containing the statement that the rentals due on the contract were paid in full was, in the absence of any explanation by the plaintiffs, evidence tending to show an admission that all the rentals accruing under the contract were paid, including those in suit. The check was given eleven days and appropriated sixteen days after the expiration of the term, and ten days after it was agreed the replacements and repairs should be made, and after two of the cars had been received by the plaintiffs for which rentals are sought to be recovered in this action. When the check was used on July 25, the lessors knew that there had then been a delay of sixteen days in delivering the cars, and that the necessary time for repairs would require their further detention, and hence the use of the check, stating on its face to be in full payment of the contract, was, unexplained, in the nature of an admission as of that date that all claims on the contract for rentals were satisfied.

The judgment is affirmed.