Tennant *v.* Hartford Steam Boiler Inspection and Insurance Company, Appellant.

Argued October 2, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*John R. Bredin,* with him *Dalzell, McFall, Pringle & Bredin,* for appellant.

*Kenneth G. Jackson,* with him *J. Roland Johnston* and *Thorp, Bostwick, Reed & Armstrong,* for appellee.

OPINION BY MR. JUSTICE HUGHES, December 29, 1944:

This is a suit in assumpsit in which the plaintiff obtained a verdict upon a policy of machinery insurance issued by the Hartford Steam Boiler Inspection and Insurance Company to the Campbell Transportation Company. The claim of the Campbell Transportation Company under the policy was assigned to R. W. Tennant, the plaintiff. Under the terms of the policy, the insurance company agreed to indemnify the transportation company against any and all loss resulting from an accident, as defined in the policy, with certain exceptions, on any and all property of the transportation company. The policy covered the steam engine on the river steamboat "Charles T. Campbell", of which the shaft here in question was a part.

The definition of "accident" as set forth in the policy, reads: "As respects any object described in this Schedule, 'Accident' shall mean a sudden and accidental breaking, deforming, burning out or rupturing of the object or any part thereof, which manifests itself at the time of its occurrence by immediately preventing continued

operation or by immediately impairing the functions of the object and which necessitates repair or replacement before its operation can be resumed or its functions restored, but the breaking, deforming, burning or rupturing of any gasket or gland packing shall not constitute an accident, nor shall the depletion of material in any part of the object, due to pitting, corrosion or wear, be construed as an accident."

The boat of the insured was a stern-wheel towboat, powered with two reciprocal steam engines, which are connected with the paddle wheel of the boat with heavy steel connecting rods or pitmans. These are connected to the wheel shaft by means of steel cranks which are shrunk onto either end of the wheel shaft and so arranged that during the revolution of the wheel one or other of the cranks is exerting force to turn the wheel. This towboat was proceeding northward up the Mississippi and Ohio Rivers with a tow of nine barges, five of which barges were loaded. Before leaving Memphis, an inspection disclosed no breaks or cracks in the wheel shaft. When the tow boat had reached a point in the Ohio River near Metropolis, Illinois, about 250 miles upstream from Memphis, it encountered a heavy fog that prevented further travel. At a point known as Belgrade Light the boat and tow were moored to the shore. During the trip the boat manifested nothing abnormal in its operation, such as unusual vibration or knocking, which would be present if there had been a crack in the wheel shaft. While the boat was at Belgrade Light, a deckhand working around the paddle wheel discovered a crack in the wheel shaft which extended from under the thrust collar more than half way around the circumference of the shaft and was sufficiently large to permit the insertion of the blade of a penknife for a distance of one-half to three-quarters of an inch. The crack was of such nature as to require the replacement of the shaft. However, after discussion among those in charge of the boat, it was decided to move it to Paducah, Kentucky,

five or six miles up the river, where repairs could be made. In order to accomplish this, the boat was moved under a half head of steam and at slow speed, with the engineer at the throttle all of the time prepared to shut off the engines at the sign of danger. The shaft was replaced at Paducah.

The appellant claims there was no accident within the definition contained in the policy. To support the position that the crack in the shaft was caused by an accident, the plaintiff called as witnesses five persons who had many years of experience on river steamboats, all of whom were familiar with the operation and maintenance of shafts on paddle wheels and all of whom had had experience with cracked and broken shafts and their effect upon steamboat operations. The court properly allowed these men to testify as experts. In *Delaware and Chesapeake Steam Towboat Company v. Starrs,* 69 Pa. 36, 41, we said: "The first three assignments of error relate to the admission of the opinions of witnesses produced as experts. It is objected that they were not first shown to be such. This is a preliminary question to be determined by the court in the first instance. If the Court shall think they are prima facie qualified, it will then be for the jury to decide whether any, and, if any, what weight is to be given to their testimony. It is a matter very much within the discretion of the court below, and if it appears that the witnesses offered had any claim to the character of experts, the court will not reverse on the ground that their experience was not sufficiently special. . . . Men who follow the water for a living are generally, I think, close observers; and this results from the monotony of their employment in general. Whenever anything unusual occurs they take accurate notice of it. Captains of boats in a tow stand at their helms all day, or lounge about the deck, with nothing to do or think about; hence they are likely to be keen observers of all the circumstances occurring in the course of a trip. Such men form their opinions from

facts within their own experience, and not from theory or abstract reasoning. They come, therefore, even more properly within the definition of experts than men of mere science. We think the three witnesses produced fall properly within the category, and that there was no error in allowing their opinions to go to the jury for what they were worth." *Stevenson v. Ebervale Coal Company,* 203 Pa. 316, 330, 52 A. 201; *Davis v. Southern Surety Company,* 302 Pa. 21, 25, 153 A. 119.

The evidence indicated that the boat operated from Memphis to Belgrade Light without any vibration or knocking; that in landing, the engines operated at full throttle, causing much stress and strain on the shaft by reason of going ahead and reversing the engines to tie up to the river bank, there being no shore facilities. We are in accord with the statement of the learned trial judge when he says: "We doubt that a layman without special skill or experience could draw a proper conclusion from the testimony regarding the accident here complained of, without the aid of the knowledge and judgment of experienced river men. The nature of the landing operation, the strains on the shaft, the noises resulting from normal and abnormal conditions of the machinery, the condition of the shaft after the landing, the size of the tow, the consequences of a break in the shaft, and many other circumstances requiring special knowledge for appraisement of their value, had to be taken into account in the formation of the judgments which were expressed. In our opinion, the witnesses called by the plaintiff were not only qualified, but their opinions were of value in permitting the jury to arrive at the facts of this very involved case." From the evidence admitted there was sufficient to warrant the jury in finding that the shaft had cracked in making the landing at Belgrade Light.

The appellant contends, however, that the damage to the shaft was not an accident as defined in the policy of insurance. The opinions of the witnesses were that the

cracks were caused by the stresses and strains incident to the landing, and they support the conclusion that there was a sudden and accidental breaking of the shaft. However, appellant claims that even though the boat proceeded at half a head of steam from Belgrade Light to Paducah, there was not an impairment of the functions of the shaft, but such procedure was due solely to engineering judgment. There was ample evidence that travel at half a head of steam was not the normal function of the engines and if, after the cracks were discovered, they had operated with a full head of steam, the shaft would have completely broken and caused serious damage. Webster's International Dictionary defines "function" as "the natural and proper action or operation." From the record it is clear that this ruptured shaft was unable to perform its duty under a full head of steam and it, therefore, follows there was an impairment of its function. The definition of "accident" in the policy reads: ". . . by immediately impairing the functions of the object and which necessitates repair or replacement before its operation can be resumed or its functions restored, . . ." The appellant complains that the trial judge has no authority to construe the terms, this amounting to a substitution of the court's definition for that of the contracting parties. We allowed this very thing in *Ritter v. Accident Association,* 185 Pa. 90, 91, 39 A. 1117, where the trial judge charged: "The court is of the opinion that the word immediately, as here used, is to be taken as an adverb of time, and that it here relates to the time of the disability, and that it is here used in the sense of instantly, or at once, but that, owing to the nature of the contract which these parties made there is not to be attached to it the strict idea that it means instantaneously, or at the same time, but that it seems that the disability must have resulted within a reasonable time after the hurt." "Immediately" under such circumstances does not mean "instantly". A contract of insurance must have a reasonable interpretation

such as was probably in the contemplation of the parties when it was made: *Grandin v. Rochester German Insurance Company,* 107 Pa. 26 ; *Humphreys v. National Benefit Association,* 139 Pa. 264, 20 A. 1047. In order to defeat recovery upon it, the meaning of the provision which purports to effect this object ought to be clear. If the provision be ambiguous, that interpretation should be adopted which will conserve the purpose for which the policy was given: *Teutonia Fire Insurance Company v. Mund,* 102 Pa. 89, *Burkhard v. Travellers' Insurance Company,* 102 Pa. 262; *Farner v. Massachusetts Mutual Accident Association,* 219 Pa. 71, 73, 67 A. 927.

We are of the opinion that the evidence justified the finding that there was an accident within the meaning of the policy and the verdict of the jury should not be disturbed.

Judgment affirmed.