W. G. JACOBS, individually and t/a Jacobs Motor Company,

v.

The CAMDEN FIRE INSURANCE ASSOCIATION and T. Chester Parsons, Thomas C. Parsons and William K. Parsons, t/a Parsons Insurance Agency.

Civ. A. No. 10952.

United States District Court
W. D. Pennsylvania.

Dec. 5, 1955.

Martin Goodman, Altoona, Pa., Howard I. Scott, Kountz, Fry & Meyer, Pittsburgh, Pa., for plaintiff.

Evans, Ivory & Evans, Pittsburgh, Pa., Horace Michener Schell, Philadelphia, Pa., for defendants.

WILLSON, District Judge.

This case was listed on my jury trial calendar. At the pretrial it developed that the only factual issue undetermined was the amount of loss suffered by plaintiff when six automobiles were damaged by the collapse of a part of the roof and wall of a building in which they were stored. However, during pretrial the parties agreed upon the amount of damage incurred, and the undisputed exhibits were offered in evidence, with the result that at the conclusion of the pretrial there was no factual issue remaining. As the issue left was the construction of a casualty contract, I directed that the case be placed upon the argument list for oral argument. Argument has been had and briefs have been filed. On the pleadings, stipulations of the parties, and pretrial record, including exhibits offered in evidence at pretrial, the following are the facts.

The plaintiff, W. G. Jacobs, trading as Jacobs Motor Company, an automobile dealer in Altoona, Pennsylvania, purchased an automobile policy from the Camden Insurance Association of Camden, New Jersey, effective for twelve months from January 1, 1951. In the policy are described seven different coverages of which plaintiff paid the premium on three, which were styled and designated, "B–1—Collision or Upset," "C. · Fire, Lightning and Transportation," and "D. Theft * * *." Plaintiff did not purchase protection under "A", styled "Comprehensive * * *." Prior to the occurrence in question,

plaintiff had leased storage space for his automobiles, and on December 20, 1951, he had six used automobiles in storage on the second floor of a two-story brick building known as 831–35 Twenty-fourth Street, Altoona, Pennsylvania, one of the locations designated in the policy. That night part of the wall and roof of the storage building collapsed during a storm, so that bricks and other portions of the building fell upon the automobiles and damaged them to an aggregate amount of $3,542.85. No one saw the occurrence. An examination of the vehicles after the occurrence indicated that in all probability they had not been put in motion or moved from their relative positions on the second floor of the building which they had occupied prior to the storm. From the photographs introduced into evidence by each of the parties, it is fairly certain that the damage was done by the collapse of the wall behind the cars, but that in all likelihood the falling in of a portion of the roof structure caused a part of the damage.

As the plaintiff paid no premium under the comprehensive provision of the policy, he claims recovery under the collision or upset provision. Nevertheless, because of the issue presented, it is well to set forth both the comprehensive and collision or upset paragraphs.

The paragraph defining comprehensive reads:

"Coverage A—Comprehensive Loss of or Damage to the Automobile, Except by Collision or Upset. Any direct and accidental loss of or damage to the automobile except loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with a vehicle to which it is attached. Breakage of glass and loss caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset."

The next paragraph is that styled "Coverage B–1—Collision or Upset" which reads:

"Direct and accidental loss of or damage to the automobile caused by collision of the automobile with another object or by upset of the automobile."

We are not concerned with the other two paragraphs on which plaintiff paid a premium.

It is the contention of the plaintiff that the phrase " * * * collision of the automobile with another object * * *" as set forth in Coverage B–1 is a general term to be interpreted broadly so as to include a "collision" of the automobile in question with the roof and wall of the building. Plaintiff advances the well-known principle that where words of a policy are not clear or are ambiguous, they are to be construed in favor of indemnity if such construction is consistent with the terms of the policy. Plaintiff maintains that even though protection might have been afforded him under other provisions of the policy, this does not weaken his claim where indemnity is obtainable under the coverage purchased.

The defendant's position is that since the insured had the choice of several coverages to suit his purposes and he chose the collision coverage, his loss and claim must be viewed through that coverage, in the light of the entire contract, including the description and definition as found in the comprehensive coverage. Such a construction, it maintains, eliminates the claim, since the falling objects provision excludes from coverage the collapse of the roof and walls of a building. Defendant also contends that the construction of the words " * * * collision of the automobile with another object * * *" does not encompass the collapse of a roof and wall upon stored automobiles.

Since this is a diversity suit, the law of Pennsylvania controls. In the absence of fraud or mistake, the only

evidence of an agreement between the parties is the agreement as written. If the subject of the intent of each party is dealt with in the instrument, the instrument is the only source for the determination of that intent. Gianni v. R. Russell & Co., Inc., 281 Pa. 320, 126 A. 791. Also see Restatement, Contracts, Section 237, comment "a". If an ambiguity is apparent in the terms of a policy, the court must construe the contract so as to sustain indemnity if the sense and meaning of the instrument are not thereby destroyed. Stroehmann v. Mutual Life Co., 300 U.S. 435, 57 S.Ct. 607, 81 L.Ed. 732; and Tennant v. Hartford, etc., Ins. Co., 351 Pa. 102, 40 A.2d 385. Where the instrument is prepared solely by one party, the ambiguous words of the instrument, such as an insurance policy, are construed more strongly against the scrivener. Markides v. Soffer, 172 Pa.Super. 215, 93 A.2d 99; McElhinney v. Belsky, 165 Pa.Super. 546, 69 A.2d 178; and Restatement, Contracts, Section 236, comment "d". Where there is no ambiguity the court must construe the language of a policy in accordance with the plain, ordinary meaning of its terms. Skelly v. Fidelity & Cas. Co., 313 Pa. 202, 169 A. 78. As in the case of contracts generally, contracts of insurance should be interpreted to carry out the intention of the parties. Sack v. Glens Falls Ins. Co., 356 Pa. 487, 52 A.2d 173. In order to determine the intent of the parties with reference to particular words of a contract, the words must be viewed in their setting within the instrument; the entire contract must be considered. Knickerbocker Trust Co. v. Ryan, 227 Pa. 245, 75 A. 1073; and Mowry v. McWherter, 365 Pa. 232, 74 A.2d 154.

With the foregoing review of the general principles to be applied, it becomes at once apparent that in deciding the issue presented, resort must be had to the decisions of the courts interpreting language similar to that used in the policy purchased by plaintiff.

As indicated above, the damage was caused by the collapse of the roof and wall upon the vehicles. Under any view of the situation, this is within the plain and ordinary meaning of the words "falling objects" as found in the definition of Coverage A. The collision coverage in the policy is in no way limited by any portion of the contract except as set forth in Coverage A. If the exclusion of falling objects in Coverage A is to be considered by the court, the defendant must prevail.

However, plaintiff says that this court must construe the collision or upset coverage without reference whatsoever to Coverage A, "Comprehensive," because no premium was paid on the coverage and therefore the language of the policy in the comprehensive paragraph may not be used or referred to in construing the meaning of the words " * * * collision or upset * * *." The plaintiff points to the very recent State of Louisiana case, Barnard v. Houston Fire & Casualty Ins. Co., La. App., 81 So.2d 132. Defendant, on the other hand, points to Al Berman, Inc., v. Aetna Casualty & Surety Co., 3 Cir., 1954, 216 F.2d 626, as authority for the proposition that all the language of the printed contract is to be considered in determining the extent of defendant's liability. Thus we have, in the policy at bar, seven coverages defined, of which plaintiff paid the premium on three only, but in determining the meaning of Coverage B–1, plaintiff says read only Coverage B–1, and the other parts of the contract related thereto on which he paid a premium. Defendant says read the definitions of all the seven coverages to determine its liability under the facts in this case. The Louisiana court came to the conclusion favored by plaintiff and there is authority favoring that view. Counsel have not cited any Pennsylvania cases which would control the decision on the issue here presented. Therefore, this court must attempt to arrive at that result which it thinks the appellate courts of Pennsylvania would reach. Eckman v. Baker, 3 Cir., 1955, 224 F.2d 954.

As I read the Al Berman, Inc. case, supra, Judge McLaughlin read all the policy provisions in construing the provisions of the insurance coverage, regardless of whether a premium had been paid on each of the risks which might have been secured under the insurance policy he had before him. For instance, he says at one point, 216 F.2d at page 628, "* * * As above indicated a broader protection was readily obtainable for a further commensurate premium." Such is the view of the Arkansas Supreme Court in Mercury Ins. Co. v. McClellan, 1950, 216 Ark. 410, 225 S.W.2d 931, 14 A.L.R.2d 806. It seems that if the Mercury decision had been handed down by the Supreme Court of Pennsylvania the problem here would be solved.

And finally, under the factual situation here, is plaintiff's loss embraced within the coverage of the policy styled "collision or upset." He says it is. Plaintiff says the Pennsylvania appellate courts have considered the meaning of the words "collision with another object" on four occasions. He cites these decisions.

The first case, Wetherill v. Williamsburg City Fire Ins. Co., 60 Pa.Super. 37, held that there was such a collision when the automobile was backed into an open elevator shaft and fell to the ground floor below. In the second case, Hatton v. Indemnity Ins. Co. of North America, 93 Pa.Super. 310, the car skidded and turned over and struck the surface of the road. It likewise was held to be a collision. In the third case, Kramer v. Ohio Farmers Ins. Co., 157 Pa.Super. 130, 42 A.2d 194, the court held that there was a collision when a stone on the road bed came into contact with the oil petcock located in the bottom of the engine. In the fourth case, Geist v. Niagara Fire Ins. Co., 173 Pa.Super. 587, 98 A.2d 223, the court held that it was a collision when a car ran over a pipe which cracked the oil pan in the bottom of the engine.

Also, plaintiff cites Blashfield's Cyclopedia of Automobile Law and Finance, Vol. 6, page 286, "Insurance," Sec. 3691,

which states: "* * * The word 'collision' in such a policy has its ordinary meaning of striking together or striking against * * *." Plaintiff also cites Webster's New International Dictionary, 2nd Ed., Unabridged and The New Century Dictionary, Vol. I. The noun "collision" according to lexicographers, is "striking together" or "striking against."

It is to be observed that the damage here was caused to stationary vehicles by a collapsing wall and roof which, in turn, was caused by the elements of nature or hand of God, and not by the hand of man. In the Barnard case, supra, the Louisiana court seems to indicate that a distinction is made in falling object cases where the object is caused to fall by an act of man rather than by what is usually termed an "act of God." Nevertheless, under the applicable decisions, the weight of authority favors defendant. No motion of the cars or of the wall or roof took place by the hand of man. The collapse was by reason of a storm. Such an event is not a collision or an upset. A Texas decision, favorable to defendant on an almost similar factual situation, is O'Leary v. St. Paul Fire & Marine Ins. Co., Tex.Civ.App.1917, 196 S.W. 575, where the court refused recovery for damage to a car on the second floor of a garage building which collapsed during a severe storm.

It is, of course, at once apparent that if the printed provisions of the paragraph "A—Comprehensive" are read and applied in determining this issue, as was done in the Mercury case, supra, and in the Al Berman, Inc., case, supra, defendant's position is fortified by the language used in the comprehensive provision which expressly excludes falling objects and which would apply to the factual situation presented here. Therefore, the decision must be against plaintiff, and an appropriate order will be entered. As permitted by Rule 52 of the Rules of Civil Procedure, 28 U.S.C., this opinion is regarded as embracing both the findings of fact and conclusions of law.