## Gilliland Estate

*Jonathan Allison,* for accountant.

*Edwin L. Klett* and *Robert J. Tate,* for residuary legatee.

*Alexander Black* and *Larry E. Phillips,* for claimant.

MARINO, P. J., June 11, 1969.—We here consider the claim of the Metropolitan Life Insurance Company (Metropolitan) against the Estate of Willard R. Gilliland, deceased. The claim is for the repayment of medical and hospital expenses paid by Metropolitan, some payments being made directly to the said estate and others to the doctors and the hospital concerned. The payments were made by Metropolitan under the provisions of a group insurance policy issued by said company to Aluminum Company of America (Alcoa)

decedent's employer, insuring eligible salaried employes of Alcoa and providing, inter alia, for payment of benefits to an employe on account of medical and hospital services rendered to the employe and his dependents.

Decedent was killed on July 17, 1963, in an automobile accident in which three of his minor children were injured and two others were also killed. The injured minors were taken to St. Clair Memorial Hospital, where they were admitted and stayed for varying lengths of time and received various medical and surgical attention.

Metropolitan's group policy had attached a supplementary agreement that set forth the provisions covering what is termed "extended medical expense benefits." Briefly stated, it called for the payment to an insured employe of expenses, therein defined as covered medical expenses, incurred for the employe, and also provided benefits payable to the employe on account of covered medical expenses incurred for a dependent of the employe. Section 7 of the supplementary agreement provides, in material portion, as follows:

"All benefits provided in this Supplementary Agreement shall be paid to the Employee as they accrue upon receipt of written proof that the medical expenses for which claim is made were actually incurred. . . ."

The insuring clause, section 5(A), reads, in material portion, as follows:

"If an Employee or a Dependent of an Employee suffers an injury or contracts a sickness and as a result thereof the Employee incurs on account of himself while insured under this Supplementary Agreement for Personal Insurance, or on account of the Dependent while the Employee is insured under this Supplementary Agreement on account of such Dependent

"(a) Covered Medical Expenses during any one Medical Expense Period which are in excess of

"(b) the Deductible Amount with respect to such Medical Expense Period, then, upon receipt of proof of claim as required herein, the Insurance Company shall pay benefits, subject to the terms and limitations hereof, in an amount equal to the Insured Proportion, as specified in the schedule in subsection (C) below, of such excess of (a) over (b), provided that . . ." the applicable maximum benefit limits are not exceeded. The definitions of personal insurance and dependent insurance are set forth in section 1 and are as follows:

"The term 'Personal Insurance' means insurance providing benefits payable to an Employee on account of Covered Medical Expenses incurred for the Employee, subject to the terms and limitations hereof.

"The term 'Dependent Insurance' means insurance providing benefits payable to an Employee on account of Covered Medical Expense incurred for a Dependent of the Employee, subject to the terms and limitations hereof."

Covered medical expenses are detailed in section 5(D), which contains a number of exceptions, including the one designated (j), which is material in this case. The pertinent portion of this part of section 5 reads as follows:

"Exceptions:—Expenses incurred for any of the following shall in no event be considered Covered Medical Expenses: . . .

"(j) Any expenses for which payment or reimbursement is received by or for the account of the Employee or Dependent as a result of a legal action or settlement, . . ."

Because there were two other cars involved in the automobile accident, there was a distinct possibility that the medical and hospital expenses incurred on

account of decedent's three minor children might well come within the above-quoted exception (j), if one of the other drivers in the accident were later to be held liable for, or to make a compromise settlement of, the claims for the personal injuries sustained by the minors.

During the Gilliland daughters' hospitalization, claim was made with Metropolitan for payment of those hospital, medical and surgical expenses covered by a group insurance policy issued by the Aluminum Company of America to Willard R. Gilliland, decedent. This policy provided hospital, medical and surgical coverage within specified limits for the named employe and his dependents as hereinbefore set forth. Following submission of these claims, Metropolitan drew checks payable to the estate on August 21, 1963, which were then accepted and cashed by the executors of the estate. The entire proceeds of these checks went to the appropriate physicians, surgeons and St. Clair Memorial Hospital. Later payments by Metropolitan of additional claims made under this policy passed directly to St. Clair Memorial Hospital, physicians and surgeons by checks drawn to their orders, but only after Mrs. June Gilliland had executed the requested reimbursement agreements.

From the evidence submitted at the hearing, and from the admitted pleadings, we make the following

## FINDINGS OF FACT

1. Decedent, Willard R. Gilliland, was killed on July 17, 1963, in an automobile accident in which three of his minor children were injured and two others were also killed. The injured minors were taken to St. Clair Memorial Hospital, where they were admitted and stayed for varying lengths of time and received various medical and surgical attention.

2. At his death, decedent was a salaried employe of Aluminum Company of America and as such was insured under Metropolitan Life Insurance Company Group Policy No. 12345-G, inter alia, for medical and hospital expense benefits for the three injured minor children as his dependents.

3. Metropolitan's group policy had attached a supplementary agreement that set forth the provisions covering what is termed "extended medical expense benefits." Briefly stated, it called for the payment to an insured employe of expenses, therein defined as covered medical expenses, incurred for the employe, and also provided benefits payable to the employe on account of covered medical expenses incurred for a dependent of the employe. Section 7 of the supplementary agreement provides in material portion as follows:

"All benefits provided in this Supplementary Agreement shall be paid to the Employee as they accrue upon receipt of written proof that the medical expenses for which claim is made were actually incurred. . . ."

4. The insuring clause in the group policy, section 5(A), reads, in material portion, as follows:

"If an Employee or a Dependent of an Employee suffers an injury or contracts a sickness and as a result thereof the Employee incurs on account of himself while insured under this Supplementary Agreement for Personal Insurance, or on account of the Dependent while the Employee is insured under this Supplementary Agreement on account of such Dependent,

"(a) Covered Medical Expenses during any one Medical Expense Period which are in excess of

"(b) the Deductible Amount with respect to such Medical Expense Period, then, upon receipt of proof of claim as required herein, the Insurance Company shall pay benefits, subject to the terms and limitations

hereof, in an amount equal to the Insured Proportion, as specified in the schedule in subsection (C) below, of such excess of (a) over (b), provided that . . ." the applicable maximum benefit limits are not exceeded.

5. The definitions of personal insurance and dependent insurance are set forth in the group policy in section 1 and are as follows:

"The term 'Personal Insurance' means insurance providing benefits payable to an Employee on account of Covered Medical Expenses incurred for the Employee, subject to the terms and limitations hereof.

"The term 'Dependent Insurance' means insurance providing benefits payable to an Employee on account of Covered Medical Expenses incurred for a Dependent of the Employee, subject to the terms and limitations hereof."

6. Covered medical expenses are detailed in section 5(D) of the group policy, which contains a number of exceptions, including those designated (i) and (j). The pertinent portion of this part of section 5 reads as follows:

"Exceptions:—Expenses incurred for any of the following shall in no event be considered Covered Medical Expenses: . . .

"(i) Any services for which the Employee or Dependent is not required to make payment.

"(j) Any expenses for which payment or reimbursement is received by or for the account of the Employee or Dependent as a result of a legal action or settlement, . . ."

7. At the end of the list of exceptions is the refund provision reading as follows:

"If benefits have been paid hereunder on account of services received by the Employee or by a Dependent and thereafter it is established that the charges for such services were not paid by the Employee or

the Dependent, or said Employee or Dependent was otherwise reimbursed therefor, the Insurance Company shall be entitled to a refund of the amount of the benefits paid which is in excess of the benefits that would have been payable based on the actual charges incurred and borne by the Employee or the Dependent."

8. Metropolitan made payment to the estate in accordance with proofs of claim submitted by the widow. Because it might later develop that said expenses were within exclusion (i) or (j) of section 5(D) of the group policy, benefits were paid in reliance upon reimbursement agreements executed in the name of the estate by the widow, June E. Gilliland, one of the executors.

9. Payments made directly to the estate were in the following amounts: For Beth Carol, $335.47; for Ellen Lee, $442.42, and for Nancy Jean, $415.46. The payments were made by checks dated August 21, 1963, and drawn to the order of, and accepted and cashed by, the executors.

10. Payments were made thereafter in accordance with written authorizations signed by June E. Gilliland, one of the coexecutors, directly to the hospital and the doctors submitting statements. These payments, in totals per minor, were as follows: For Beth Carol, $328; for Ellen Lee, $68, and for Nancy Jean $721.20.

11. During the course of negotiations about payment of these benefits, R. I. King, account executive of Metropolitan's Group Customer Relations, wrote to W. F. Cook, of Alcoa, on September 18, 1963, in part: "The Reimbursement Agreement applies only to the Extended Medical Expense Insurance and not to the coverages of the Basic Plan. The scope of the agreement does not cover benefits payable under an individual's Automobile Coverage. It relates only to amounts obtained through legal action or settlement

that are specifically allocated for Medical Expenses that would otherwise be payable under the Extended Medical Expenses Plan." This interpretation was conveyed to Robert C. McCartney, who, in turn, communicated with his client, June E. Gilliland.

12. In March of 1964, a compromise settlement of all claims arising out of the accident was made with the Estate of Charles F. Buente, deceased, the driver of one of the other cars in the collision. Proceedings were had in the Court of Common Pleas of Washington County by way of amicable actions in trespass, at Nos. 370-73, February term, 1964, and under date of March 31, 1964, the court approved the compromise settlements negotiated by the widow, the executors of the Gilliland Estate and the guardians of the three minor children.

13. In the settlement, a total of $200,000 was paid by the Buente Estate, which was allocated.$100,000 to the causes of action under the wrongful death and survival status and $22,000 to the claims for personal injuries to each of the three minors. The remaining $34,000 was paid to June E. Gilliland as parent on account of the deaths of the two minor children who died in the accident. The settlement agreements reached for the personal injuries of the three surviving daughters did not allocate nor did they specifically compensate in any way the medical or hospital expenses incurred as a result of the accident.

14. In the petitions for approval of settlement and distribution and the orders of court made thereon, the $22,000 allocated to the compromise and settlement of the cause of action for each minor's personal injuries, after deduction of attorney's fees and expenses, was divided in half and $9,862.88 awarded to June E. Gilliland and Pittsburgh National Bank, co-guardians of the estate of the minor, and $9,862.88 to June E. Gilliland, surviving parent of the minor.

15. The $100,000 agreed upon in compromise and settlement of the causes of action under the wrongful

death acts and the survival act, after deduction of attorney's fees and expenses, was allocated *entirely to the wrongful death claim, with nothing for the survival action,* and was apportioned and ordered paid in the amount of $29,887.50 to the widow, June E. Gilliland, and $19,925.02 each to the guardians of the minors, Beth Carol, Ellen Lee and Nancy Jean.

16. Under date of April 3, 1964, releases in settlement of the various claims were executed and delivered, acknowledging receipt of the settlement amounts and releasing all claims. Each of the releases given in settlement of the cause of action for personal injuries sustained by the minors was executed and acknowledged by June E. Gilliland, individually, and June E. Gilliland and Pittsburgh National Bank, coguardians of the minors, acknowledged receipt of $22,000, and released the Buente Estate and its liability insurer "from any and all claims and demands, damages, costs, . . . resulting or to result from . . ." the accident.

17. Metropolitan made its claim to the executors for reimbursement of the amounts paid as medical and hospital expense benefits, and upon the executors' declining to admit the claim, filed it in these proceedings. The claim is being heard in connection with the audit of the first and final account of the executors.

DISCUSSION

Throughout the period in which these claims were made and paid, there was a course of communication between Robert C. McCartney, of Eckert, Seamans & Cherin, attorneys for the Estate of Willard R. Gilliland, with Alcoa and Metropolitan. The purpose of the letters among these three parties was the clarification of the reimbursement provisions in the extended medical expense insurance plan that covered employe dependents. The reimbursement problem arises from two policy clauses, of which one clause excepts certain expenses from "covered medical expenses" and reads:

"Exceptions: —Expenses incurred for any of the following shall in no event be considered Covered Medical Expenses: . . .

"(j) Any expenses for which payment or reimbursement is received by or for the account of the employee or Dependent as a result of a legal action or settlement, . . ."

The other reimbursement clause contains the following:

"If benefits have been paid hereunder on account of services received by the Employee or by a Dependent and thereafter it is established that the charges for such services were not paid by the Employee or the Dependent, or said Employee or Dependent was otherwise reimbursed therefor, the Insurance Company shall be entitled to a refund of the amount of the benefits paid which is in excess of the benefits that would have been payable based on the actual charges incurred and borne by the Employee or the Dependent."

When Metropolitan demanded that the coexecutor of the estate, Mrs. June Gilliland, sign reimbursement agreements before payment would be made, Robert C. McCartney by letter of August 30, 1963, to W. R. Cook, of Alcoa, inquired of the nature of these reimbursement provisions. This letter was forwarded to Metropolitan; and on September 18, 1963, Richard I. King, account executive of Metropolitan's group customer relations, answered this inquiry in his letter to Mr. W. F. Cook. Mr. King wrote, in part:

"The Reimbursement Agreement applies only to the Extended Medical Expense Insurance and not to the coverages of the Basic Plan. The scope of the agreement does not cover benefits payable under an individual's Automobile Coverage. *It relates only to amounts obtained through legal action or settlement that are specifically allocated for Medical Expenses that would otherwise be payable under the·Extended*

*Medical Expense Plan.*" (Italics supplied.)

Relying on this interpretation and clarification, Mr. McCartney advised Mrs. Gilliland as coexecutor to execute and complete the reimbursement agreements dated August 20, 1963. She took his advice and executed the agreements. However, on November 8, 1963, Mr. King wrote to R. E. Peters, of the Alcoa Group Insurance Department:

"Before releasing the benefit checks it should be pointed out to the Attorney that in clarification of his understanding of the item numbered (2) in the second paragraph of his letter, *the right of Metropolitan to reimbursement in such circumstances is not dependent upon the amount of such reimbursement being specifically set forth in any judgment against or settlement from an insurance carrier of the third party involved in the accident.*

"Mr. McCartney may not intend that his letter has any contrary meaning but inasmuch as his statement is susceptible to such a construction, we would not wish any doubts in this regard to remain. *Metropolitan would be entitled to reimbursement in the particular circumstances under the terms of the policy without any reference to the amount in any judgment or settlement, which could always be readily ascertained.*" (Italics supplied.)

This information was conveyed to Mr. McCartney by Mr. Peters on November 23, 1963, but the agreements had been signed and delivered to Alcoa.

There is little doubt in our minds that the wording of these clauses is surely ambiguous. There is reference to "receipt of payment or reimbursement because of legal action or settlement." What legal actions or settlements are included within these terms? Is recognition given for the distinction between damages for pain and suffering, disfigurement, impairment of bodily functions, medical expenses, loss of earnings and earning power, punitive damages and

the like? Or is reimbursement required when a legal settlement of any type is concluded? One is not certain. The draftsman of the clauses was himself unsure. It is obvious that there is ambiguity.

The settled law of this State dictates that such ambiguities be resolved against the insurer: Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company, 385 Pa. 394, 397 (1956); MacDonald v. Metropolitan Life Insurance Company, 304 Pa. 213 (1931); West v. MacMillan and Automobile Underwriters Insurance Co., 301 Pa. 344 (1930).

The contract of insurance must have a reasonable interpretation, approaching what was probably in the contemplation of the parties when it was made: Tennant v. Hartford Steam Boiler Inspection and Insurance Company, 351 Pa. 102 (1944).

On April 24, 1964, a lump-sum settlement of $200,000 was reached with the Buente Estate. One-half of the settlement, $100,000, was allocated to the wrongful death claim arising from the death of Willard R. Gilliland. The remaining $100,000 settled the wrongful death claims for Raymond E. and Julia Gilliland and the personal injury claims for Beth Carol, Nancy Jean and Ellen Lee Gilliland. Before the Buente Estate was released from liability, agreements for amicable actions in trespass were filed in the Court of Common Pleas of Washington County in which this settlement was approved. Aside from the $134,000 for the three wrongful death claims, $22,000 was allocated to each of the actions arising from the personal injuries of the daughters. Of this $22,000, after deduction of legal expenses, one-half, or $9,862.88 was given to the guardians of the daughters. The other half went to Mrs. Gilliland, in her parental capacity. In the petitions for approval and settlement, *no amounts were designated as compensation for medical expenses.*

The amounts allocated to the wrongful death claim

of Willard R. Gilliland and to the personal injury claims of the daughters are the sums Metropolitan alleges were in part payment of medical expenses, though undesignated.

Metropolitan contends that, ambiguities notwithstanding, it should prevail. Another note is sounded in its brief, when it is stated:

"The insurance company's claim for refund in this case should not be refused on the ground that claims against a decedent must be proved by clear and convincing evidence. Not only does the evidence in this case meet this requirement, but also the reason for the rule does not extend to the facts of this case. The transactions that are in question here were between the company and the executors, not between the company and the decedent, and the executors' lips are not sealed by death. Furthermore, to confront the company with such a stringent requirement, in cases where the insured employee has died, will discourage the company from extending, in such cases, the convenience of current payment of benefits. The company would have the right to withhold payment of benefits until it should be ascertained whether the particular medical or hospital expenses for which benefits were claimed fell within exclusion (i) or (j) of Section 5 (D) of the Supplementary Agreement. It could not be compelled to make payment of benefits in advance, pursuant to a reimbursement agreement, as was done in this case."

The answer to this argument is simple enough. The requirement of strict proof is not singled out to apply to insurance company claims; it is uniformly extended to all claims against the estate of a decedent. As to being a transaction between the company and the executors, such does not relieve the claimant of the burden of proof. Compare the claim of the funeral director; it is based on a contract with the executor. Again, it is urged that special consideration seems

appropriate, else the policy of the company to pay such claims might be changed, to the detriment of those dealing with the company.

We cannot affirm the validity of such an argument. The policy of the company in paying claims is a matter of internal management of the company with which we will not interfere.

Metropolitan also maintains, in the alternative, that it is entitled to repayment on the principle of restitution, as set forth in Restatement, Restitution, §§113, 114. The principle of law there enunciated is a familiar one; but it must be noted that reimbursement is predicated upon the *obligation or legal duty* of the estate to make payment of necessaries furnished the minors. A decedent's estate is not liable for payment of necessaries furnished minors after the death of the decedent: Shore Estate (No. 1), 81 D. & C. 119 (1953). Hence, we feel that the principle of restitution will not aid the company in securing repayment. Furthermore, it must be remembered that the estate received no actual payments, as such. The first checks made out to the estate, August 21, 1963, were simply transferred by the estate to the proper recipient; the estate simply acted as a conduit.

Metropolitan now urges that the executors be surcharged, and that we refuse to confirm their account. Its legal brief continues:

"It is not an answer to the insurance company's claim for refund that June E. Gilliland has not paid to the estate the amounts of the benefits the company paid directly to the hospital and doctors concerned. As the terms of the Supplementary Agreement makes very clear, all benefits due thereunder are payable to the insured employee, whether the expenses were incurred for services rendered to him or to his dependent. When June E. Gilliland, by requesting it of the insurance company, procured the payment of benefits directly to the hospital and doctors she was

personally liable to, she applied assets of the estate to the discharge of her individual obligations. Since in the account filed by the executors they have not charged themselves with the receipt of these benefit payments, their account should not be confirmed. All the facts required to surcharge them for these amounts have been established by the evidence produced at the hearing on this claim. The insurance company would have no standing to pursue June E. Gilliland to compel her to make restitution to the estate."

Again, our comment is simply that we have no desire to dictate Metropolitan's internal policies. Whom they might sue, or to what effect, is a matter for them to decide. But we are not inclined to surcharge the executors in a proceeding to establish entitlement to a claim; and, most assuredly, not on the posture of this record.

## CONCLUSIONS OF LAW

1. All claimants against the estate of a decedent stand on an equal footing; the claim must be substantiated by clear and convincing proof. A claim for reimbursement under an insurance policy provision does not alter the application and effect of this requirement in any manner.

2. Metropolitan, by making payment of hospital and medical benefits with complete notice of all the facts elemental to a determination of the applicability of section 5(D)(i), could not, under Pennsylvania law, recover back any money that it paid upon these claims, from decedent's estate.

3. The purpose of the reimbursement agreements was to prevent a waiver of a right to reimbursement under section 5(D)(j) and, as a consequence, by accepting these agreements, Metropolitan waived any right to reimbursement under any other provisions of the supplementary agreement, including section 5(D)(i).

4. The language of section 5(D)(j) is ambiguous and unclear, and, consequently an interpretation favorable to the insured must be given. The proper interpretation of this provision is that reimbursement is required only if the legal settlement made on behalf of the estate and Gilliland daughters specifically allocates part of the recovery to hospital or medical expenses.

5. The ambiguity of this insurance provision is clearly demonstrated by the contradictory interpretations placed upon reimbursement provision, section 5(D)(j), by a senior member of claimant's staff.

6. The reasonable interpretation of section 5(D)(j) is that reimbursement is required on behalf of the employe's estate only when a legal action or settlement specifically allocates part of the recovery to hospital and medical expenses. Any other interpretation would deny the fundamental purpose of medical insurance.

7. The conduct and activities of Metropolitan throughout the negotiations and litigation clearly evidence its recognition that it waived section 5(D)(i) and it is, therefore, waived.

8. The settlement on behalf of the wrongful death and survival action of Willard R. Gilliland specifically allocated all recovery to the wrongful death claim. None of the funds in fact did or could by law pass into the estate and, therefore, the estate received no payment whatever for these hospital or medical expenses.

9. The settlement agreements and petitions for amicable actions, in trespass, allocated no amounts to medical or hospital expenses of the Gilliland daughters, and under the terms of the policy, no reimbursement was received and none is now owing.

The claim of Metropolitan Life Insurance Company for reimbursement is refused and dismissed.