Armon, Appellant, *v.* Aetna Casualty and Surety Company.

Argued January 14, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*Horace Michener Schell*, with him *Manuel Sidkoff*, for appellants.

*George M. Brodhead*, with him *Joseph W. Henderson* and *Rawle & Henderson*, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, March 24, 1952:

This litigation is largely concerned with the proper construction to be placed upon certain ambiguous terms of an insurance policy.

Plaintiffs have for twenty-five years been engaged in the wholesale jobbing of carpets and rugs at 35 South Second Street, Philadelphia, a building five stories in height. In 1946 they obtained from defendant Insurance Company a water damage policy for which they paid the prescribed premium. While it was in force, on May 21, 1947, a heavy rainstorm occurred and water came into the building damaging their goods to the extent of $4,599.54. Defendant refused to pay the loss,—the amount of which it admitted,—because it denied liability under the terms of the policy. A jury found a verdict in favor of plaintiffs, but the court entered judgment for defendant n.o.v.

The facts are practically undisputed. It appears that the roof of the building sloped toward a drain or downspout designed, and ordinarily adequate, to discharge the rain water from the roof, but on this occasion it had become blocked with mud, stones and pieces of wood, with the result that a large puddle of water formed on the roof to the height of some 12 or 13 inches. A few months before the issuance of the policy plaintiffs had entered into an agreement with a contractor for the erection of an elevator shaft in the building from the basement to the fifth floor, with a penthouse, or structure for housing the power, which extended to a height of about 15 feet above the roof. This work, except for the installation of the elevator tracks and car, had been completed a couple of months before the occurrence of the rainstorm from which the influx of water resulted. Around the base of the penthouse there had been built flashings, extending upward about 8 inches from the roof and for several inches over the roof, for the purpose of making a watertight joint in the angle between the penthouse wall and the surface of the roof, and protected by tin in such manner that when rain would hit the wall it would run harmlessly off onto the roof and down the spout. The penthouse and the flashings were admittedly well built and wholly free of any defects in construction. On the occasion in question the water from the puddle on the roof, overtopping the flashings, found its way between them and the wall of the penthouse, and thence down along the outside of the wall of the elevator shaft through all the floors of the building.

The first question for determination is whether plaintiffs made out a prima facie case of defendant's liability within the coverage of the policy, which insured "against all direct loss and damage caused solely by the accidental discharge, leakage or overflow of water . . . from within the following source or sources: . . .

rain or snow admitted directly to the interior of the building through defective roofs, leaders or spouting, . . . ." Defendant would have this provision construed to mean that the water must come *through* a *defective* spout in the sense of escaping therefrom through a break or leak in its structure. Having in mind, however, the well-established rule that if an insurance policy is reasonably susceptible of two interpretations it is to be construed in favor of the insured in order not to defeat, without plain necessity, the claim to indemnity which it was the insured's object to obtain,* we cannot accede to defendant's suggested construction of this provision. On the contrary, we must accept the obviously more just and practical interpretation ascribed to it by plaintiffs, namely, that the word "through" means "by reason of" or "because of", and that the word "defective" is not limited in meaning to defectiveness in the *physical structure* of the spout, but includes also any defect in its efficient *operation* whereby it fails to function for the purpose for which it was intended. Therefore, if the clogging up of this drain was the primary and efficient cause of the overflow which, entering the building, caused the damage to plaintiffs' goods, the loss resulted *"through defective . . . spouting . . ."* within the coverage of the policy.

Defendant points to clauses in the policy which, it contends, exempted it, in any event, from liability.

---

* *Frick v. United Fireman's Insurance Co.*, 218 Pa. 409, 417, 67 A. 743, 746; *Rathblott v. Royal Indemnity Co.*, 310 Pa. 37, 40, 164 A. 718, 719; *Tennant v. Hartford Steam Boiler Inspection and Insurance Co.*, 351 Pa. 102, 107, 108, 40 A. 2d 385, 387; *Kunkle v. Union Casualty Insurance Co.*, 62 Pa. Superior Ct. 114, 117; *Hubbard v. Globe Indemnity Co.*, 87 Pa. Superior Ct. 483, 487, 488; *Harbridge v. Mutual Fire Insurance Co. of Chester County*, 151 Pa. Superior Ct. 278, 281, 30 A. 2d 360, 362; *Koser, Admr., v. American Casualty Co. of Reading*, 162 Pa. Superior. Ct. 63, 64, 56 A. 2d 301.

There was a provision that the insurance was not to extend to "loss or damage caused directly or indirectly, (a) by seepage, leakage or influx of water through building walls, . . . or (b) by . . . backing up of sewers or drains, . . . ." A defense based on an exception or exclusion in a policy is an affirmative one, and the burden is cast upon the defendant to establish it: *Bowers v. Great Eastern Casualty Company*, 260 Pa. 147, 148, 149, 103 A. 536; *Watkins v. Prudential Insurance Co.*, 315 Pa. 497, 508, 173 A. 644, 650; *Zenner v. Goetz*, 324 Pa. 432, 435, 188 A. 124, 125; *Gardocki v. Polish National Alliance of United States of America*, 141 Pa. Superior Ct. 53, 59, 14 A. 2d 604, 607; *Brier Hill Coal Co. v. Hartford Steam Boiler Inspection & Insurance Co. of Hartford*, 146 Pa. Superior Ct. 193, 196, 22 A. 2d 230, 231. It is only when the existence of facts constituting an affirmative defense is admitted by the plaintiff, or is established by uncontradicted testimony in the plaintiff's case, that such burden is removed from the defendant; *Ehrlich v. United States Fidelity & Guaranty Co.*, 356 Pa. 417, 424, 51 A. 2d 794, 798. Here there was no testimony whatever, on the part of either plaintiffs or defendant, tending to show that there was any "seepage, leakage or influx of water *through building walls*"; what happened was that the water flowed down the outside of the wall of the penthouse and the elevator shaft and did not leak *through* it into the interior of the shaft. Neither was there any "backing up" of the drain, but a prevention of the normal passage of the water down through the drain. This attempted defense, therefore, is without merit.

Another provision of the policy invoked by defendant is as follows: "Unless otherwise provided by agreement in writing added hereto this Company shall not be liable for loss or damage . . . from repairs, alterations and/or extensions to the . . . buildings, except

that ordinary minor repairs necessary to care and maintenance are permitted; . . . ." Undoubtedly the building of the elevator shaft and the penthouse atop the roof constituted a major alteration, but did the loss or damage result therefrom? As already stated, the burden of establishing that fact was upon defendant, and evidently it failed to establish it to the satisfaction of the jury. Defendant's expert witnesses testified that the construction of the roof and the flashings at the penthouse was "conventional in every way", that there was nothing "to show improper construction of the roof and the flashing", or that there was "any defect in connection with the roof." The jury were, therefore, justified in concluding that the true, primary and efficient cause of the loss resulting from the influx of the rain water was, not the existence of the alteration to the building, but the operational defect in the spouting,—a loss against which the policy insured.

Considerable argument was devoted by the parties to a provision in the policy which suspended the insurance during part of the time occupied in making major alterations or additions to the building. In view of the fact, however, that the alteration complained of, insofar as it bore in any way upon the situation here involved, was completed nearly two months before the event occurred upon which plaintiffs' claim is founded, the provision in question is inapplicable and requires no discussion.

Judgment reversed and record remanded with direction to enter judgment on the verdict.