## Kraftsow *v.* Brown, Appellant.

Argued October 9, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and GUNTHER, JJ. (ARNOLD, J., absent).

*Morris L. Weisberg,* with him *Harry Norman Ball,* for appellants.

*M. Stuart Goldin,* with him *Abe. J. Goldin* and *Goldin & Goldin,* for appellees.

OPINION BY DITHRICH, J., January 20, 1953:

Plaintiffs, who are engaged in the business of retailing household furnishings at 622 Arch Street in the City of Philadelphia, brought this action in assumpsit against defendants, who in the course of their general insurance business acted as plaintiffs' insurance broker. They sued to recover damages allegedly sus-

tained as a result of defendants' failure to notify the insurer that plaintiffs had moved to a new business location and that a certain water damage policy should be transferred to cover merchandise in the new place of business, the alleged consequence of that failure being that damage to plaintiffs' merchandise by water on August 10, 1947, was an uninsured loss. The jury returned a verdict for plaintiffs in the sum of $1122.75. This appeal is from the dismissal of defendants' motions for a new trial and judgment n.o.v.

Of the defenses offered, only one is now material; namely, that even had the policy been in effect as to the new location, it would not have covered the water damage which gave rise to the loss. It insured "against all DIRECT LOSS AND DAMAGE caused solely by the accidental discharge, leakage or overflow of WATER . . . from within the following source or sources: [inter alia] PLUMBING SYSTEMS . . ." But it specified that certain hazards were not covered, among them being "loss or damage caused directly or indirectly, (a) by seepage, leakage or influx of water through building walls, foundations, lowest basement floors . . .; or (b) by floods, inundation, backing up of sewers or drains, or the influx of tide, rising or surface waters; . . ." It also provided that it would not cover property located in the basement unless the same was raised at least four inches from the floor by means of skids or other device.

Appellants contend that the court below erred in taking from the jury factual issues raised by the testimony relating to the policy's coverage of appellees' loss and in holding as a matter of law that the loss would have been covered had the policy been in force.

According to appellants, the factual issues raised, and not submitted to the jury, were (1) whether the loss was caused by an "accidental discharge" of water;

(2) whether it was caused by "seepage" through building walls, by the "backing up of sewers or drains," or by "surface waters," all of which were hazards not covered by the policy; and (3) whether the merchandise was placed on skids as required by the policy.

Plaintiffs' testimony is as follows. There were heavy storms on August 8 and 9, 1947. When the premises were visited on Sunday, August 10, water streaks on the walls and puddles of water were discovered on all four floors and in the basement of the building. An investigation disclosed that four feet of water had collected on the roof, and while some of plaintiffs' employes were on the roof a "terrible roar" was followed by a "continuous gush of water" in the basement from an uncapped outlet on the drain or soil pipe—described as extending from the roof to the basement where it runs along a wall of the building to a sewer in Arch Street—and from toilets and sinks in the building which were connected to the pipe. The flooding of the basement and the damage of the merchandise, kept on skids as required by the policy, resulted.

An investigator for the insurer, testifying on behalf of plaintiffs, stated that the water which damaged the merchandise came from the overflow of a toilet on the first floor and from the uncapped outlet of the soil pipe, which was located at a point just inside the foundation wall where the pipe goes out to the street. When asked on cross-examination, "Q. The cap being open, the water therefore gushed into the basement causing the loss?" he answered, "That is right."

Defendants' witnesses testified to conversations they had with plaintiffs after the loss. Their testimony was that plaintiffs said that the use of a plunger on the drain pipe on the roof caused the water to pass

through the interior plumbing of the building into the basement, and that no damage was done to merchandise in the basement until that happened. There was also defense testimony that most of the merchandise was on skids, but that the damaged merchandise was not.

There is complete agreement that the loss was caused by water discharged from within the plumbing system, and the testimony differs only as to whether the damaged merchandise rested on skids as required by the policy, and as to whether a plunger was used on the pipe on the roof causing the release of the accumulated water through the interior plumbing. The conflict relating to the skids was clearly submitted to the jury by the affirmance of defendants' point which read: " 'If you find that the goods of the plaintiff when exposed to water were resting on the cement floor of the cellar, then you must find for the defendant.' " The verdict conclusively resolved that issue in plaintiffs' favor.

Whether a plunger was used or not could have a bearing only on the question of whether the damage was caused by an "accidental discharge" of water. But even when the evidence is viewed in the light most favorable to defendants, the fact that a plunger was used does not alter the accidental character of the occurrence, nor was there any other evidence which would have warranted submission of that question to the jury. In *Hamilton v. American Indemnity Co.,* 82 Pa. Superior Ct. 191, this Court said (pp. 194, 195) : "Some authorities hold that the word 'accidental' means the happening of an event without fault or negligence on the part of anyone. This is a narrow and restricted meaning. In its ordinary, popular sense, it expresses the thought of an event occurring without design or purpose, or unintentionally on the part of the assured.

Given the latter meaning, it does not negative the idea of negligence on the part of one whose physical act the occurrence follows. But it does not include the result of wilful design. If accident and negligence be not opposites, accident and design are . . ." Cf. *Hey v. Guarantors' Liability Indemnity Co.*, 181 Pa. 220, 37 A. 402.

There is no evidence that the damage was caused by "seepage" through building walls; in fact, it is all to the contrary. Moreover, we cannot agree with appellants that there is evidence from which a jury could find that the loss was caused by a "backing up of sewers or drains" or by "surface waters."

But even so, the case of *World Fire & Marine Ins. Co. v. Carolina Mills Distributing Co.*, 8 Cir., 169 F. 2d 826, presents persuasive reasons for sustaining the action of the court below. The very provisions of the policy under consideration in the case at bar were analyzed and construed in that case. The facts there, more favorable to appellants' contention than those in the instant case, were stated by the Court as follows (p. 827): ". . . while that policy was in effect there was an unusually heavy rain. As a result, the city's main sewer located under the surface of the street in front of appellee's building became overloaded and the resulting pressure in that sewer caused water therefrom to flow back through a soil pipe connecting the plumbing system in appellee's building with the city sewer. The pressure extended up into the plumbing system inside the building and caused a metal cap covering an opening in a portion of the plumbing system, called a 'house trap', located in the basement, to be broken and forced off with the result that the basement was flooded and appellee's merchandise was damaged . . ." It was held (p. 830) that "The excepting clause [meaning the clause enumerating hazards not

covered] *in its entirety* did not apply when . . . there was an accidental discharge of water *from within the plumbing system.*" (Emphasis added.)

The reasons for that holding are well stated in the following excerpts from the opinion of the Court. At page 829: "It [insuring clause] did not merely insure against water damage in general terms and leave the door open to the exception of water damage caused by some particular instrumentality without conflict with the general insuring clause. It narrowed the water damage covered to certain carefully circumscribed types of water damage. Included in those narrowly defined types of damage covered was the damage involved in this case—'damage caused solely by the accidental discharge, leakage or overflow of water . . . from within the . . . Plumbing Systems . . .'" And at pages 829, 830: "The excepting clause here involved appears in the contract in a paragraph dealing with subjects not ordinarily connected with plumbing systems within a building. . . . It is not unreasonable to assume that the loss or damage intended to be excepted by the words 'backing up of sewers or drains' was, like the other losses excepted in this paragraph, such losses as would result from causes having no connection with the plumbing system, or from the discharge of water 'outside' the plumbing system (as distinguished from 'within' the plumbing system) such as the backing up of an open sewer in a basement."

The case having been fairly tried and properly submitted to the jury, its verdict will not be disturbed.

Judgment affirmed.