**AL BERMAN, Inc., Appellant,**

v.

**The AETNA CASUALTY & SURETY CO.**

**No. 11322.**

United States Court of Appeals
Third Circuit.

Argued Oct. 5, 1954.

Decided Nov. 10, 1954.

Sydney C. Orlofsky, Philadelphia, Pa. (Henry Arronson, Philadelphia, Pa., on the brief), for appellant.

Joseph W. Henderson, Philadelphia, Pa. (Rawle & Henderson, Harrison G. Kildare, Philadelphia, Pa., on the brief), for appellee.

Before MARIS, McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The water damage insurance policy on which this suit is based covered a Philadelphia haberdashery store " * * * against all Direct Loss by 'Water Damage' * * * Except as Hereinafter Provided * * *." Water damage is defined in the policy to mean among other things "the accidental discharge, leakage or overflow of water or steam from * * * plumbing systems * * * the accidental admission of rain or snow directly to the interior of the building through defective roofs, leaders or spouting * * *." Under "Perils not included" the policy provides that "This Company shall not be liable for loss by 'Water Damage' * * * caused directly or indirectly by: (a) seepage, leakage or influx of water through building walls, foundations, basement floors, * * *." On the face page of the policy immediately after stating its amount, the premium rate and the amount of the premium, is space for "Additional coverages for which insurance is provided only when a premium is inserted." This has specific space for insertion of premiums, if coverage is provided, for "Underground Water Supply Mains and Fire Hydrants" and for "Chemical Refrigerant Leakage." There is a third line for the insertion of any other special coverage that might be desired. In

the spaces opposite these three lines appears the word "Nil".[1]

It is undisputed that on August 3, 1950, during the policy period, there was a heavy rain-storm in Philadelphia which resulted in some water damage to merchandise located in the rear part of the basement of the insured premises. The main issue is whether under the proofs the loss was within the policy. The court below held that it was not.

This is a diversity suit in which the law of Pennsylvania controls. There is no real dispute as to the facts. During the storm the rain water drained from the roof of the store into a spout or "leader" which ran down the outside front wall of the building and entered a ground soil pipe that in turn connected eventually with the city sewer. The soil pipe was broken about three inches beyond its connection with the spout with the result that considerable of the rain water coming into the pipe from the spout flowed out of the broken pipe and through a hole in the store's front foundation wall and into the front section of the basement. From the latter the water ran into the lower rear portion of the basement doing some damage to the stock there stored.

■ Appellant argues that the above quoted policy clause excluding water damage caused by "seepage, leakage or influx of water through building walls, foundations, basement floors" does not apply because in the present instance rain was involved. The thought is that since the words water and rain are used in the coverage clause the fact that rain is not mentioned in the exclusion provision creates at least an ambiguity which must be interpreted in favor of the assured. If the ambiguity asserted were present, by settled law we would resolve it in favor of the assured. But there is no ambiguity here. The coverage is for water damage, a generic term under which the policy includes particular kinds of water in stated conditions. And just as carefully it excludes certain types of damage caused by water generally and not restricted to rain water, water from plumbing systems or the like. Actually, under the facts the water now concerning us at the time it occasioned the damage in the rear basement, had ceased to be rain and, properly characterized, was by then surface water. See Richman v. Home Ins. Co. of N. Y., 1952, 172 Pa.Super. 383, 94 A.2d 164. Rain as such is "The condensed vapor of the atmosphere falling to the earth in drops large enough to attain sensible velocity." New Standard Dictionary.

■ Appellant suggests that when the policy uses the language in its protective clause "through defective * * * spouting" it should be interpreted as "because of" defective spouting. This may well be correct but that does not alter the plain policy directive that damage so arising is strictly limited by the exclusion provision which does not contradict the coverage but does directly restrict it to that which the insurance company has contracted to insure. And the exclusion applies just as forcibly even if the spouting be considered plumbing in accord with appellant's alternative contention. As above indicated a broader protection was readily obtainable for a further commensurate premium.

Appellant argues that the trial judge disregarded the binding effect of the Pennsylvania court decisions in Armon v. Aetna Casualty Co., 1952, 369 Pa. 465, 87 A.2d 302, and Kraftsow v. Brown, 1953, 172 Pa.Super. 581, 94 A.2d 183. Though identical water damage policies were at issue in those suits the facts were

1. An example of wider protection in consideration of a further premium is the coverage which the policy states could be obtained for "Underground Water Supply Mains and Fire Hydrants" and which includes "the peril of accidental discharge or leakage of water from underground water supply mains and fire hydrants * * * and, With Respect to Such Peril Only, the exclusion of loss by seepage, leakage or influx of water through building walls, foundations, basement floors * * * shall not apply." This clause in the policy was specifically stated to be "void unless additional premium is inserted on the first page of this policy."

essentially different. In Armon recovery was allowed because the water there entered the insured premises between the roof flashings and the wall of the penthouse in question and thence down along the wall of the elevator shaft through all the floors of the building. As the court said in its opinion, 369 Pa. at page 469, 87 A.2d at page 304, "Here there was no testimony whatever, on the part of either plaintiffs or defendant, tending to show that there was any 'seepage, leakage or influx of water *through building walls*'; * * *." (Emphasis by the court.) In Kraftsow recovery was allowed because water collected on the roof of a building and entered through uncapped outlets on the drain. The court in that case said, 172 Pa.Super. at page 586, 94 A.2d at page 185:

> "There is no evidence that the damage was caused by 'seepage' through building walls; in fact, it is all to the contrary."

The Armon and Kraftsow cases furnish classic illustrations of the limited coverage extended by the sort of policy before us with respect to water damage caused by the accidental admission of rain directly to the interior of the building through defective leaders or spouting. In the Armon decision the leader became clogged which caused rain water to collect on the roof of the penthouse from whence it flowed down the wall as above outlined. In the Kraftsow case water collected on the roof and entered through uncapped outlets on the drain. In neither situation did water enter "through building walls [or] foundations" as it did here.

■ Plaintiff also urges that its stock was damaged by water leaking from corroded toilet pipes in the rear area of the basement. The trial judge sitting without a jury thought there was policy coverage of this type of damage but found that " * * * practically all, and perhaps all, the damage came from the water from the broken soil pipe at the front of the building." Regarding the proofs on this branch of the suit the court said, "It is not at all clear as to what damage, or that any damage, came about from water from the toilet. The water from the broken soil pipe mingled with the water from the toilet and it is impossible for me to make a finding in reference to damage caused by water from the toilet." Since there is substantial evidence to support those findings we affirm them.[2] Appellant argues that where it is difficult to do so it is not obliged to identify the cause of its damage with mathematical certainty. Of course we agree but our problem does not arise out of the court's inability to measure damages with meticulous exactness but from the purely speculative nature of any estimate which in turn would necessarily be based upon "a mere guess" that any damage at all had been caused by water from this source. See Fix v. Pennsylvania Power & Light Co., 1943, 346 Pa. 598, 601, 31 A.2d 114.

■ Finally, appellant complains that the defendant did not present any affirmative evidence to the effect that the damage resulted from an excluded risk. But the necessary affirmative evidence was squarely before the trial court in the plaintiff's case namely: the policy, the broken soil pipe, the course of the water through the foundation wall, and the lack of testimony to establish damage from the corroded toilet pipes. Under the circumstances the affirmative burden was "removed from the defendant." Armon v. Aetna Cas. Co., supra, 369 Pa. at page 469, 87 A.2d at page 304.

The judgment of the district court will be affirmed.

2. The basement floor was "perfectly dry" the evening before the rainstorm, the plumber found no other source for the water apart from the gushing at the northwest corner on August 3, and the leakage from the toilet pipes was not discovered until quite some time later.