239 F.2d 362
 Jack FINE, Harry Fine and Isadore Fine, Trading as Fine Brothers, Appellants,
v.
UNDERWRITERS OF LLOYD'S LONDON, United Standard Insurance Co., Limited, and United Offices Insurance Co., Limited.
 No. 11950.
 United States Court of Appeals Third Circuit.
 Argued October 15, 1956.
 Decided December 7, 1956.
 
 Howard R. Detweiler, Philadelphia, Pa. (Ambler, Detweiler & Walsh, Philadelphia, Pa., on the brief), for appellees.
 M. Stuart Goldin, Philadelphia, Pa. (Goldin & Goldin, M. Stuart Goldin, Abe J. Goldin, Philadelphia, Pa., on the brief), for appellants.
 Before MARIS, GOODRICH and McLAUGHLIN, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 In this suit on a water damage policy of insurance the facts are not in dispute. On the premises adjoining plaintiffs' insured property there was a shack containing an ordinary toilet. A water pipe under the floor of the shack, which was part of the toilet plumbing, broke at a point some four feet from the south foundation wall of plaintiffs' building. Escaping water seeped through the wall into plaintiffs' basement, damaging merchandise there stored.
 
 
 2
 The water damage conditions in the policy are:
 
 
 3
 "`Water Damage' — Wherever in this policy the term `Water Damage' occurs, it shall be held to mean (a) the accidental discharge, leakage or overflow of water or steam from within the following source or sources; plumbing systems (excluding sprinkler systems), plumbing tanks for the storage of water for the supply of a plumbing system, heating systems, elevator tanks and cylinders, standpipes for fire hose (except when supplied by a sprinkler system), industrial or domestic appliances and refrigerating or air conditioning systems; (b) the accidental admission of rain or snow directly to the interior of the building through defective roofs, leaders or spouting, or through open or defective doors, windows, skylights, transoms or ventilators.
 
 
 4
 "Damage by Tanks — Except as herein provided this policy shall also cover direct-loss caused by collapse or fall of a tank or any component part or support thereof, which forms a part of the plumbing system; such loss being considered as incidental to and part of the loss caused by `Water Damage'.
 
 
 5
 "Damage to Source of Loss — This policy shall not cover damage to any system, tank, appliance, or contents thereof, or part of a building which is the source of such damage."
 
 The exclusion clause reads in part:
 
 6
 "Perils not included — This Company shall not be liable for loss by `Water Damage' or collapse or fall of a tank caused directly or indirectly by: (a) seepage, leakage or influx of water through building walls, foundations, basement floors, sidewalks or sidewalk lights; * *".
 
 
 7
 The action was tried to the court on stipulated facts. The decision was in favor of the defendant and plaintiffs appealed.
 
 
 8
 As stated by appellants in their brief their theory is that the policy covers damage from water which may escape from "* * * any plumbing system whether within the damaged building or any other building". By that proposition appellants deliberately include, as they must, plumbing systems separate and apart from, and having no connection with, the premises whose contents are protected in whole or in part by the insurance agreement. In this instance, under the policy in suit, Fine Brothers, 727 South 4th Street, Philadelphia, were safeguarded from water damage to silks and woolens located at that address. The injury to the merchandise was admittedly caused by water from a break in the plumbing system on an adjoining property which leaked through the Fine building foundation wall and entered the basement of that structure. The only basis offered in support of appellants' contention that coverage extends to accidental discharge of water from any plumbing system anywhere, including those having no relation whatsoever with appellants' named property, is their assumption that the particular policy phrase is ambiguous, therefore to be construed in their favor. No case is cited indicating that "plumbing systems" as it appears in this standard insurance contract is of at all doubtful meaning and we have found none ourselves that would lend substance to that view.
 
 
 9
 The two decisions relied on generally by appellants refute such supposition. In the first of these, World Fire & Marine Ins. Co. v. Carolina Mills Distributing Co., 8 Cir., 1948, 169 F.2d 826, 830, 4 A.L.R.2d 523, the damage was caused by the breaking of a cap on the "house trap", a part of the insured building's plumbing system. Because the flow of water into the plumbing system had been increased by pressure from the main city sewer the defense urged the damage came within the policy exception of "`backing up of sewers or drains'". Demonstrably the breaking of the cap was the proximate cause; if it had held, no overflow would have resulted. That was illustrated by the fact that no overflow came from unbroken caps in the same area. The broken "house trap" cap was the independent cause of the water damage.
 
 
 10
 While not in point on its facts, the World Insurance opinion is most helpful in construing the identical policy language, "plumbing systems", which is the only important issue in this appeal. Whatever else that opinion may be said to have held, throughout the portion of it discussing the policy provision which insured "`* * * against all direct loss and damage caused solely by the accidental discharge * * * of water * * * from within * * *. Plumbing Systems (not including any Sprinkler System)'" it clearly accepted the clause as meaning the plumbing system on the assured's premises at pages 828-830. Kraftsow v. Brown, 172 Pa.Super. 581, 94 A.2d 183, the other case urged by appellants, follows the World Insurance decision; like that case it did not have the element of seepage through a foundation wall which concededly is present in the appeal at bar. There water passed through the roof drain pipe of assured's premises into the interior plumbing system and then, primarily because of an uncapped soil pipe, into the basement. Kraftsow, 172 Pa.Super., at pages 586, 587, 94 A.2d 183, plainly adopts the World Insurance conception of the plumbing system covered by this type of policy. Nowhere in either opinion is the slightest hint of ambiguity as to the phrase.
 
 
 11
 A reading of the insurance contract before us shows that all of the water damage sources covered are obviously intended to be on or in, certainly related to, the assured's property; having named them, the same policy sentence goes on to include water damage from "(b) the accidental admission of rain or snow directly to the interior of the building * * *". (Emphasis supplied.) That "building" can be no other than the assured's building, the contents of which are insured against water damage.
 
 
 12
 In the next paragraph coverage is provided for "* * * direct-loss caused by collapse or fall of a tank or any component part or support thereof, which forms a part of the plumbing system; * * *." (Emphasis supplied.) It could not be seriously argued that this protection referred to a tank or other part of a plumbing system off the particular premises since, reasonably speaking, such a tank, which by falling would cause direct-loss to merchandise on the property covered, of necessity must be located on the property. With that kind of tank part of the plumbing system named in the policy, the designated plumbing system can only be the one belonging to the insured premises.
 
 
 13
 The third water damage condition and most significant of all reads: "Damage to Source of Loss — This policy shall not cover damage to any system, tank, appliance, or contents thereof, or part of a building which is the source of such damage." (Emphasis supplied.) The policy is for damage to contents of a building; to silks and woolens in the building at 727 South 4th Street, Philadelphia. As the condition states, it does not cover damage to "any system * * * of a building which is the source of the damage." There would be no need to exclude coverage for damage to a plumbing system or other system not part of the assured's premises but nevertheless the source of the water damage. Two of the systems referred to in the above condition are the plumbing system or systems and the water sprinkler system or systems named in the first condition and here categorically eliminated as far as damage to them goes to avoid possibility of confusion since they are on the assured's premises and in a given situation could not only be the source of water damage but incur damage themselves. The policy in this condition is concerned with disposing of questions that might be raised regarding unprotected property of the assured which was closely identified with a loss under the policy. It was not concerned with a vast unknown area of property unrelated to the assured and for which there was no pretension of protection. No need or use to exclude that which was in reality uninsurable because the insurer could have no knowledge of what was covered, would indeed be at the mercy of unknown conditions over which it had no supervision or right to inspect.
 
 
 14
 There is argument at some length by appellants as to whether Al Berman, Inc. v. Aetna Casualty & Surety Co., 3 Cir., 1954, 216 F.2d 626, follows the Pennsylvania law with reference to the effect of the above quoted exclusion clause in this type of policy. The discussion is not in point as there was no coverage under the primary insurance contract for the damage alleged to have occurred. We therefore never reach the exclusion clause and have no excuse for examining into it at this time.
 
 
 15
 The judgment of the district court will be affirmed.