**Clifford O. JOHNSON and Beverly Johnson, Plaintiffs-Respondents,**

v.

**KANSAS CITY FIRE & MARINE INSURANCE COMPANY, a corporation, Appellant-Defendant.**

**No. 23611.**

Kansas City Court of Appeals.

Missouri.

Dec. 4, 1962.

Dwight L. Larison, David R. Odegard, Houts, James, Randall, Hogsett & McCanse, Kansas City, for appellant.

Martin Anderson, Kansas City, for respondents.

SPERRY, Commissioner.

Plaintiffs, husband and wife, sued defendant insurance company on a "homeowners" insurance policy issued by defendant on the home of plaintiffs. The policy covered loss of personal property on the premises. The case was tried to the court, resulting in a judgment for plaintiffs in the sum of $779.00. Defendant appeals.

It is admitted that the policy, as issued, was in full force at the time the loss occurred, but defendant contends that the loss claimed was not due to a hazard covered by the terms of the policy, but was due to damage by flood waters, a hazard not covered by the policy.

The clause of the policy upon which plaintiffs rely is as follows:

"Perils insured against * * *

"Windstorm and Hail, excluding:

"(a) * * *

"(b) loss to the interior of the building(s) or the property covered therein ·

caused by rain, snow, sand or dust, whether driven by wind or not, unless the building(s) covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct force of wind or hail and then this Company shall be liable for loss to the interior of the building(s) or the property covered therein as may be caused by rain, snow, sand or dust entering the building(s) through openings in the roof or walls made by direct action of wind or hail."

Mr. Johnson testified to the effect that he had moved into the home shortly prior to the occurrence hereinafter described; that many of his household and personal effects were packed in cardboard cartons and stored in the basement, including clothing, books, toys, appliances, bedding, etc; that the cartons, and an electric stove, were setting on the floor of the basement, where they had been placed when the family moved in; that, on July 30, 1958 a violent wind and rainstorm arose; that he heard the noise and proceeded to inspect and secure the doors and windows of the house; that he heard a metal patio table smash against the house, at the back; that he went to the basement to see that it was secure; that he found the basement door open and rainwater being blown into the basement onto the cartons of goods; that water was running down the steps of the basement entrance and into the open door of the basement; that the water eventually got under the cartons, but at that time had no depth; that the door was broken and pulled away from its "keeper"; that, before the storm occurred, he had been in the basement on that day and the door was closed.

Plaintiff's exhibit 2 was introduced in evidence and was identified by plaintiff as being a picture of a broken plank on the door. It shows the broken woodwork, splintered and split, with a metal plate still attached by one screw, but the other screw had been pulled out of the wood and is not shown. The metal plate was identi-

fied as being the keeper. Plaintiff stated that the wind blew the door open during the storm and he found that condition, as to the door and the keeper, when he went down to the basement at about 9:00 p. m., July 30, 1958; that the rain was coming in, "I got wet, it was a heavy rain, it *eventually* got under the cartons"; that it continued to rain hard for over an hour. He testified extensively concerning the number of cartons, their contents and value, and the character and value of other property damaged. He further stated that, since repairs had been made to the door, no water had come into the basement although there had been rain.

On cross-examination Mr. Johnson stated that, since he could not close the door, rain came directly in through the force of the wind, and from the basement entranceway where it had fallen; that the water coming from the basement entrance "well" was surface water because it first fell on the surface of the entranceway; that water eventually accumulated in the basement to a depth of 18 inches; that all of it came in the form of rainwater through the broken basement door; that the door was never closed and it rained all night; that there was a drain in the basement and also one in the stairwell; that the basement drain was working; that he saw no water flowing into the stairwell from the surrounding ground area; that he had never, knowingly, testified differently on this point.

Mr. Harris, defendant's agent, stated that he inspected the premises within a few days after the loss was reported; that he found water marks on the basement door 19 inches high; that he saw no evidence in the neighborhood indicating that there had been a severe wind storm; that the basement well was higher than the surrounding area; that the door keeper was broken at that time.

Defendant's witness Benberg is an architect and engineer. He stated that the ground slopes away from the stairwell, which has a curb two inches higher than the ground immediately surrounding it:

that the land slopes from the west toward the area between the buildings, forming "more or less" of a waterway west of the basement entrance. He testified to technical facts which tend to show that the wind, at the velocity shown by weather reports on that date, could not have exerted enough pressure on the door (it being largely below the surface) to break the keeper and push the door open; that 18 inches of water standing in the stairwell would have exerted sufficient pressure to break the door open. He stated that water standing one or two inches deep would not have exerted sufficient pressure to have broken the door.

Mr. McKee, defendant's agent, stated that plaintiff called defendant's office and reported water damage to property in his basement; that witness told plaintiff that the policy did not cover such a loss unless the door had been breached by wind; that plaintiff made no claim at that time that such a break had occurred; that, later, plaintiff submitted a wind damage claim.

Mrs. Johnson's deposition was introduced in evidence and she stated that when she got to the basement, after hearing a noise, the door had blown open and water was blowing in, "well, it was just trickling in".

In rendering decision for plaintiffs the trial court made the following pronouncement:

"The defendant's answer recited an affirmative defense in that 'plaintiff's damages, if any, were caused by flood waters, a hazard excluded by the terms of plaintiff's policy.' The evidence does not show that the defendant has established this defense, and there is no proof that flood waters, as such, caused the damage in question. This being an affirmative defense, and the burden being upon the defendant, this issue must necessarily be decided in *plaintiff's* favor. See Armon v. Aetna Ins. Co. [369 Pa. 465], 87 A.2d 302;

Pearl Assurance Co. v. Stacey Bros. [6 Cir.], 114 F.2d 702; Loyola University v. Sun Underwriters Ins. Co. [D.C.], 93 F.Supp. 186 [5 Cir.], affirmed 196 F.2d 169."

It clearly appeared from the testimony of Mr. and Mrs. Johnson that a windstorm preceded the damage. They both said that the wind blew the keeper off and blew the door open. No other reasonable explanation appears for the condition of the door being as it was when these witnesses *first* arrived at the basement and found the door *open, water blowing in and beginning to trickle under the merchandise.*

Opposed to this, defendant offered a mass of scientific data tending to show that the force of the wind could *not* have blown the door open but that an accumulation of 18 inches of water in the stairwell could have forced it open; but it failed to show any such accumulation of water in the basement when the door was first found open and the keeper broken. As the trial court observed, defendant pleaded an *affirmative* defense and relied on it throughout. It failed completely to establish such defense by substantial evidence. See Armon v. Aetna Insurance Company, 369 Pa. 465, 87 A.2d 302, 304. In any event, the trial court was not bound to find for defendant on its evidence, and we may not set aside the judgment unless it is clearly erroneous. We cannot say that the judgment is erroneous.

The court fully understood the issues and properly resolved them.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.

All concur.