**TREASURE CRAFT JEWELERS, INC., Appellant,**

v.

**JEFFERSON INSURANCE COMPANY OF NEW YORK, Appellee.**

No. 77–1942.

United States Court of Appeals, Third Circuit.

Argued March 27, 1978.

Decided Aug. 14, 1978.

Garth, Circuit Judge, filed a dissenting opinion.

---

13. See note 11, *supra.*

M. Stuart Goldin, Isenberg, Goldin & Blumberg, Philadelphia, Pa., for appellant.

Richard W. Hopkins, Thomas Gary, White & Williams, Philadelphia, Pa., for appellee.

Before HUNTER, WEIS and GARTH, Circuit Judges.

## OPINION

JAMES HUNTER, III, Circuit Judge:

In this case Treasure Craft Jewelers, Inc., a Pennsylvania corporation, appeals an order of the district court granting summary judgment for defendant, Jefferson Insurance Company of New York. The trial judge held that the terms of the insurance policy issued by Jefferson to Treasure Craft did not provide coverage for a loss suffered by the insured. We affirm.

## I

At some point during the late evening of February 6 or the early morning of February 7, 1976, the Southampton, Pennsylvania store of plaintiff Treasure Craft was broken into and robbed. Thieves stole $94,369 in jewelry and merchandise. Plaintiffs submitted a claim for reimbursement for part of the loss to defendant Jefferson Insurance. The claim was based on a policy issued by Jefferson in June of 1974, covering the jewelry in plaintiff's Levittown, Pennsylvania store. Treasure Craft claimed that certain of the jewelry in the Southampton store had been covered by the policy on the Levittown store up to a loss of $25,000.

Jefferson rejected the claim on the ground that the loss was not covered by the policy. Treasure Craft then brought suit to recover the $25,000 it claimed. Defendant's motion for summary judgment was granted by the district court.

The policy under which plaintiff claims provides standard "jewelers block" insurance for the plaintiff's store in Levittown. The contract states in part:

### LIMITATIONS OF LIABILITY

2. The maximum liability of the Company resulting from any one loss, disaster or casualty is limited to:

A. $100,000 in respect of property at the Insured's premises as described herein;

. . . . .

E. $25,000 in respect of property elsewhere and not included in Clauses (A), (B), (C), and (D) above or otherwise limited herein.

In endorsement entitled "Property in Custody of Personnel Away from Premises", the insurer provided for limitation of its liability to the insured for property not in the Levittown store. The endorsement stated that the coverage would be limited to $5,000 for property in the custody of Treasure Craft's officers and employees, unless the endorsement named the individual having custody at the time of the loss. Full $25,000 coverage was provided if the property was in the custody of an officer or employee named in the endorsement. Donald Bound, president of Treasure Craft, was one of the individuals listed. Under paragraph 7 of the policy, entitled "Insuring Conditions", the parties also agreed that

coverage would not apply to "additional locations of the insured."

Plaintiff's theory in the district court was that at the time of the robbery, the jewelry in question was in the custody of Bound, the president of the company. It argued that although the property was not on the premises of the Levittown store, the jewelry lost would nevertheless be covered by the policy since it was property in the custody of an officer of the insured.

In support of this proposition and in response to Jefferson's motion for summary judgment, Treasure Craft submitted the affidavit of Donald Bound. The affidavit stated that Bound, as president and chief executive officer of Treasure Craft, has exercised supervisory powers over the Southampton store and spent a substantial amount of time at that store. Thus, plaintiff argued, Bound had custody of the jewelry at the time of the robbery.

Bound's deposition further explained the nature of his supervision over the jewelry in the Southampton store. Bound testified that the jewelry involved in this case was taken from the Levittown store to Southampton when that store opened in November 1975. Part of the merchandise was chosen for the inventory at the Southampton store and the rest, valued at approximately $33,000, was placed in that store's safe and remained there during the three months prior to the robbery. Bound also stated that when he visited the Southampton store, he would work on the merchandise left in the safe, rearranging and resetting the stones. He further related that the jewelry was being prepared for resale *not* in Levittown, but at a third store, which had not opened at the time of the robbery.

The district court held that the policy did not cover the loss suffered by Treasure Craft. The court determined that the provisions in the contract were free from ambiguity, and that the parties had agreed to a limited scope of coverage. It read the policy to provide that the coverage of property outside of the Levittown store did not include property at another location of the insured. The court thus held that Jefferson had not insured risks of loss at any location of Treasure Craft other than that mentioned in the policy itself—the Levittown store.

Treasure Craft argues that the district court, in holding that the policy did not cover any losses of property from locations other than the Levittown store, erroneously, applied Pennsylvania law. It contends that section 2–E of the policy should have been applied in this case, thus raising the issue of whether Bound, the president of Treasure Craft, was in custody of the merchandise at the time of the loss. Since that issue raises a disputed question of fact, plaintiff argues that summary judgment was inappropriate. We agree with the trial judge's reading of the policy, and thus do not reach the custody question.

## II

The rules relating to the analysis of insurance policies in Pennsylvania are well established. Since the policy is a contract, the court's duty is to ascertain the intent of the parties as manifested in the language of the agreement. In discharging its duty, the court should attempt to view the policy in its entirety, and give effect, if possible, to all portions of the contract. *Blocker v. Aetna Casualty & Surety Co.*, 232 Pa.Super. 111, 332 A.2d 476 (1975); *Masters v. Celina Mutual Insurance Co.*, 209 Pa.Super. 111, 224 A.2d 774 (1965). Since insurance policies are often adhesion contracts prepared by the insurer on its own forms, ambiguities in the policy should be resolved against the insurer and not against the policy holder. Nevertheless, the court should read policy provisions so as to avoid ambiguities, if the plain language of the terms of the contract permits. *Pennsylvania Manufacturers Association Insurance Co. v. Aetna Casualty & Insurance Co.*, 426 Pa. 453, 233 A.2d 548 (1967). A court should not torture the language of the policy in order to create ambiguities which, in turn, could be construed in favor of the insured. *Urian v. Scranton Life Insurance Co.*, 310 Pa. 144, 165 A. 21 (1933).

Treasure Craft argues that the terms of its policy with Jefferson are ambiguous as to the scope of the coverage of the merchandise that was stolen from the Southampton store. It argues that the coverage for property outside the premises of the Levittown store in the custody of the employees or officers of the company, embodied in paragraph 2–E of the policy, reasonably could be applied to the stolen merchandise, and thus that term conflicts with the limitation of coverage in paragraph 7. Consequently, the company argues that paragraph 2–E, and not paragraph 7, should apply to its loss.

■ We agree with the trial judge that the language in paragraph 7 [that coverage shall not apply to additional locations of the insured] is unambiguous when read with paragraph 2–E. Reviewing the policy to give effect to all its provisions, we hold that the effect of the policy in this case was to exclude any losses sustained by theft of goods stored in any location of Treasure Craft other than the Levittown store. This accords with the expectations of the parties under a contract such as that involved here. In a policy for insurance against burglary, the specified location of the insured's property is crucial to the insuring company's assumption of the risks involved. The coverage of its policy should not extend to losses that occur at different places. In determining whether or not to accept a risk, the insurer will certainly require information as to the safety and security of the premises, and will condition its acceptance of the risks on the continued existence of those facts on which it bases its decision to insure. *Cf. Morgan Smith Automotive Products, Inc. v. Continental Insurance Co.*, 418 Pa. 190, 210 A.2d 273 (1965) (fire insurance policy).

Treasure Craft argues that even if the policy is not ambiguous, the trial judge erred in granting summary judgment because a material issue of fact exists about whether the insured had knowledge of the limitation of coverage in the policy. On this point, Treasure Craft relies on *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Su-

per. 511, 327 A.2d 363 (1974), in which the court stated:

Even where a policy is written in unambiguous terms, the burden of establishing the application of an exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him.

230 Pa.Super. at 517, 327 A.2d at 365.

In *Hionis*, the court refused to enforce a limitation of the insured's right of recovery for losses he had sustained as the result of a fire. The policy provided for supplemental insurance on the insured's premises, covering improvements to the property. The testimony established that the insured had asked an agent for the insurer to provide coverage for additions and improvements on the property, and entrusted the entire matter to the agent. After fire had destroyed the insured premises, the insurer refused to pay for the full amount of the loss basing its refusal on a provision in the policy that provided for less than full reimbursement if the insured failed to repair or replace the damaged property. The court found that the insured's purpose in obtaining the insurance was to have complete protection for the improvements he had made to the property, and that he trusted the agent to fulfill that objective. Thus the court held that the insurer had the burden of showing that the insured was aware of the exclusion in the policy and understood it in order to rely on the exclusion in disclaiming liability on the policy.

In *Miller v. Prudential Insurance Co. of America*, 239 Pa.Super. 467, 362 A.2d 1017 (1976), the court distinguished *Hionis* and affirmed a grant of judgment on the pleadings in favor of the insurer. The court held that even though the insurer had the duty of showing that the insured had knowledge of the exclusion from coverage in a "major medical" insurance policy, such knowledge in that case would be imputed to the insured. In *Miller*, the plaintiff-insured purchased a policy which provided for a deduction of other medical benefits payments received in the event of sickness or injury.

The court held that knowledge of the limitation on benefits payments should be imputed to the plaintiff for four reasons: first, the plaintiff had other coverage at the time he applied for a policy from the insured. The defendant's policy was intended to cover costs not insured by the other policies, and not to be duplicate coverage. Secondly, the application for the policy required the insured to name all other medical insurance covering him. Thirdly, the language of the policy was clear and unambiguous in stating that other payments would be deducted from benefits under insurer's policy. Finally, the court noted that the policy called the insured's attention to the existence of the deductibility provision. Because of these factors, the court found that the insured's intent in acquiring the policy was to expand on, and not duplicate, existing coverage, and that he was on notice of the possibility of the deduction.

We believe that this case involves a situation more closely related to *Miller* than to *Hionis*. The undisputed facts lead us to conclude as a matter of law that Treasure Craft must be held to have known of the limitation in the policy. First, at the time that the policy was agreed upon, Treasure Craft operated only the Levittown store. Since the Southampton store was not yet in existence, Jefferson could not have evaluated the risks it would be required to assume concerning the second store. Second, the policy indicated that it was intended to cover only the Levittown store. The first paragraph of the policy states that Jefferson "does insure the aforementioned Insured, whose premises are located at 7022 Bristol Pike, Levittown, Pennsylvania." Third, in the proposal for insurance, Jefferson specifically questioned Treasure Craft about the security arrangements in the Levittown store, including the description of the safe, the burglar alarm system, and the location within the store of the jewelry. Consequently, Treasure Craft was aware of the importance of the location and its security arrangements to the insurer in deter-

mining whether to assume the risks of coverage. Finally, Treasure Craft was aware of the limited scope of coverage outside the Levittown store. In the proposal, the company listed the amount of time that jewelry was away from the store, and the maximum value of that jewelry at any one time. The responses in the proposal indicate that the insured was aware that this aspect of coverage was to be for short periods of time and for limited amounts of merchandise.

All of these factors indicate that Treasure Craft was aware of the policy's limitation as to coverage in locations of Treasure Craft other than the Levittown store. Further, as we have held, the provision limiting coverage to only the Levittown store was clear and unambiguous. Thus we believe, as did the court in *Miller, supra,* that it would be inappropriate to find that an issue of fact exists as to Treasure Craft's knowledge of the limitation in the policy.

Since the trial court properly held that the scope of the policy did not include the loss suffered by Treasure Craft and that the insured was aware of the limitation, its judgment will be affirmed.

GARTH, Circuit Judge, dissenting.

I must respectfully dissent from the majority's affirmance of the district court's order granting summary judgment in favor of the defendant Jefferson Insurance Company. The majority has concluded—as did the district court—that as a matter of law the plaintiff Treasure Craft's insurance policy must be construed such that paragraph 7 of the policy (an insuring condition limiting coverage to the Levittown premises) controls to deny Treasure Craft coverage in this case, and that paragraph 2E as modified by an Endorsement (a limitation of liability limiting coverage to $25,000 for property "away from" the insured premises if it is in the "custody" of certain named individuals) is of no effect here. I believe that this holding is contrary to the law of Pennsylvania,[1] and provides an artificial

---

1. There is no question but that Pennsylvania law governs in this case under the principle of

*Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See Daburlos v.*

construction which must necessarily lead to an absurd result. In my view, property of the Insured, although at premises of the Insured other than Levittown, is nevertheless covered up to $25,000, if that property is a part of the Levittown inventory, if it is located "elsewhere" than the Levittown premises, and if it is in the "custody" of one of the individuals named in the "Property in Custody of Personnel Away From Premises Endorsement" to paragraph 2E.[2] Since at least two of these conditions present disputed material issues of fact, I believe that granting summary judgment was improper. Fed.R.Civ.P. 56.

## I

### A.

When a dispute arises concerning insurance contracts, it is a truism that such contracts are to be construed strictly against the insurer, and in favor of coverage. *See, e. g., Hionis v. Northern Mutual Insurance Co.,* 230 Pa.Super. 511, 327 A.2d 363, 365 (1974); *Eastcoast Equipment Co. v. Maryland Casualty Co.,* 38 Pa.D. & C.2d 499; 207 Pa.Super. 383, 218 A.2d 91 (1966). In particular, since insurance contracts are viewed as adhesion contracts and since the purchaser of the policy is often little concerned with definitional and exclusionary clauses, the Pennsylvania courts have been especially particular to construe strictly exclusionary provisions and exceptions to the insurer's general liability under the policy. *See, e. g., Hionis v. Northern Mutual Insurance Co., supra; Frisch v. State Farm Fire & Casualty Co.,* 218 Pa.Super. 211, 275 A.2d

849 (1971); *Simon v. Hospital Service Association of Pittsburgh,* 192 Pa.Super. 68, 159 A.2d 52 (1960); *Kraftsow v. Brown,* 172 Pa.Super. 581, 94 A.2d 183 (1953).[3]

Moreover, it is "settled that any ambiguity or contradiction in an insurance policy *must* be construed against the insurer, and in a manner favorable to coverage." *Buntin v. Continental Insurance Co.,* 583 F.2d 1201, at 1207 (3d Cir. 1978) (emphasis in original). *See, e. g., Stroehmann v. Mutual Life Insurance Co. of New York,* 300 U.S. 435, 57 S.Ct. 607, 81 L.Ed. 732 (1937); *Transport Indemnity Co. v. Home Indemnity Co.,* 535 F.2d 232 (3d Cir. 1976); *Daburlos v. Commercial Insurance Co. of Newark, New Jersey,* 521 F.2d 18 (3d Cir. 1975); *Mohn v. American Casualty Co. of Reading,* 458 Pa. 576, 326 A.2d 346 (1974); *Burne v. Franklin Life Insurance Co.,* 451 Pa. 218, 301 A.2d 799 (1973); *Hionis v. Northern Mutual Insurance Co., supra.* If there is more than one reasonable reading of a policy provision, a court is bound to construe that provision against the insurance company which has drafted it. *See, e. g., Blue Anchor Overall Co. v. Pennsylvania Lumbermen's Mutual Insurance Co.,* 385 Pa. 394, 123 A.2d 413 (1956); *Blocker v. Aetna Casualty & Surety Co.,* 232 Pa.Super. 111, 332 A.2d 476 (1975); *Burns v. Employers' Liability Assurance Corp.,* 205 Pa.Super. 389, 209 A.2d 27 (1964); *Vowinckel v. Donegal Mutual Insurance Co.,* 201 Pa.Super. 229, 191 A.2d 706 (1963); *Good v. Metropolitan Life Insurance Co.,* 166 Pa.Super. 334, 71 A.2d 805 (1950). *See also Buntin v. Continental Insurance Co., supra; Continental*

Commercial Ins. Co. of Newark, N.J., 521 F.2d 18 (3d Cir. 1975).

2. Donald Bound is one of those named individuals.

3. *Kraftsow,* for example, concerned the liability of an insurer under a water damage policy. The loss in *Kraftsow* had been caused by water which had collected on the roof during heavy storms, and which had run into a drain pipe on the roof. The water ran into the plaintiff's basement from an uncapped outlet of the drain pipe, and from the sinks and toilets which were connected to that pipe. The insurance policy insured against "all Direct Loss and Damage caused solely by the accidental discharge, leak-

age, or overflow of water . . . from within the [Plumbing System]." The policy also *excluded* from coverage damage caused by "backing up of sewers or drains." The insurer claimed that this latter exclusion excused it from liability. The court rejected this claim, holding that even if the loss were due to such "backing up", an excepting clause appearing in a paragraph dealing with subjects not connected to plumbing systems could not be invoked to deny coverage in a situation which was clearly within the ambit of the insuring clause. Also, *see World Fire & Marine Ins. Co. v. Carolina Mills Distrib. Co.,* 169 F.2d 826 (8th Cir. 1946).

*Assurance Co. v. Conroy,* 209 F.2d 539 (3d Cir. 1954).

I believe that the only logical and natural construction of the insurance policy in this case, as it is applied to the situation here presented, is one that affords coverage to the insured when property from its Levittown store is in the custody of a named individual, who is away from the Levittown premises, no matter where that individual may be located (within, of course, the policy's territorial limits)—including other premises of the insured. Indeed, it seems to me that the interpretation put forward by the insurance company leads to anomalous results. For example, let us suppose that Donald Bound had taken some jewelry from the Levittown store and was on his way to Treasure Craft's Southampton store. If Bound had been robbed just *before* he stepped through the doorway of the Southampton store, the theft clearly would be covered up to a loss of $25,000 by paragraph 2E. However, Jefferson would argue, and the majority apparently agrees, that if the robbery took place *after* Bound had stepped through the doorway of the Southampton store, there would be no coverage since paragraph 7 would operate to cut off its paragraph 2E liability. To hinge coverage on whether or not Bound has stepped over the Southampton store's threshold does not seem to me to be a reasonable result. The fact that property of the insured from its Levittown store happens to be physically present for a time at another store, does not, in my opinion, take that property out of the insuring provision of paragraph 2E: the property is covered up to $25,000 if it is away from the Levittown premises and if it is in the custody of one of the named individuals.

If there is disagreement with my reading of the policy, at best that disagreement can only lead to the conclusion that the policy is susceptible of two interpretations. The second interpretation, as adopted by the majority, is that Levittown jewelry, if found upon uninsured premises of Treasure Craft (*i. e.,* at the Southampton store), is excluded from coverage by paragraph 7, even though it is in the custody of a person named in the Endorsement to paragraph 2E. To be sure, such a construction is, in my view, strained. But to the extent that it has attracted at least two members of this court, it cannot be said that such a construction—even though clearly incorrect by my lights—is entirely unreasonable.

If indeed the majority's construction of the policy is a reasonable one, then we are faced with an ambiguity in the policy, inasmuch as the intended interpretation and effect of paragraphs 2E and 7 cannot clearly be ascertained. *See Buntin v. Continental Insurance Co., supra; Consolidation Coal Co. v. Liberty Mutual Insurance Co.,* 406 F.Supp. 1292, 1295 (W.D.Pa.1976).

Application of the basic tenets of insurance law expressed above requires that we resolve this ambiguity in favor of the insured. In *Buntin,* for example, applying the same legal principles, this court was presented with two contradictory versions of the effect of an endorsement on a clause contained in the main policy. We did not find it necessary to accept one interpretation over the other; rather, since the policy language was fairly susceptible of both interpretations (thereby creating an ambiguity), and since the effect of the endorsement was unclear, we held that the policy must be construed to provide coverage to the plaintiff.

Similarly, in this case, giving every benefit of the doubt to the majority's interpretation, at the least we are faced with two versions of the relationship which exists between two provisions of the policy. As I stated above, I believe that only one construction can reasonably be adopted. However, even if we view each version of the policy as tenable, then we *must,* under Pennsylvania law, accept the version adverse to the insurance company, and favorable to the insured. Thus, in my opinion, the policy must as a matter of law be construed such that jewelry from the Levittown inventory—but temporarily away from the Levittown premises—in the custody of an individual named in the Endorsement is covered by paragraph 2E up to

$25,000, no matter where it is located within the policy's territorial limits.

To the argument that such a construction could lead to the sham practice of describing all property in other stores as being from the Levittown inventory, thereby avoiding altogether the effect of paragraph 7, I would rejoin that that type of abuse must pass through the filter of the fact-finding process. It would be for a fact-finder—jury or judge—to determine whether in fact the property was from the Levittown store, or whether it was not.

To summarize, I think that the effect of paragraph 2E as endorsed and paragraph 7, as they apply in the situation presented by this case, is clear. However, even if their effect were not clear, at best an ambiguity in the insurance policy would be created. That being the case, we must accept the construction which is more favorable to the insured. Moreover, were we required to choose one of the two possible interpretations, in my opinion there is no question but that the one put forward by Treasure Craft is the only reasonable construction of the policy.

### B.

Once it is determined that paragraph 2E applies to the property at issue in this case, it becomes apparent that summary judgment was not a proper disposition. Summary judgment, of course, may be granted only when "there is no genuine issue as to any material fact," Fed.R.Civ.P. 56. The construction of the insurance contract which I believe must be adopted presents at least two genuine issues of material fact, viz., whether the jewelry in question was actually from the Levittown store (or whether it had in fact been transferred to the Southampton store), and whether the jewelry in question was in the "custody" of Donald Bound at the time of the theft. Giving Treasure Craft (the opponent of summary judgment) the benefit of all reasonable doubts and inferences, see Braden v. University of Pittsburgh, 552 F.2d 948, 966–67 (3d Cir. 1977) (en banc) (Garth, J., concurring), it is clear that these factual determinations are in issue in this case. These fact issues must go to trial and must be submitted to the jury. See, e. g., Ball v. Aetna Casualty & Surety Co., 58 F.R.D. 362 (E.D.Ky.1973) (in an action based on a personal property floater the court held that summary judgment must be denied because issues of fact existed as to whether plaintiff was a member of the insured household). See also Atlanta Tallow Co. v. Fireman's Insurance Co., 119 Ga.App. 430, 167 S.E.2d 361 (1969) (in an action on a theft insurance policy it was held to be error to grant summary judgment for insurer on theory that the stolen money was not in the insured's "custody" at the time of the robbery). Cf. Fox West Coast Theatres v. Union Indemnity Co., 167 Wash. 319, 9 P.2d 78 (1932) (in action on a robbery insurance policy issue of "custody" of money treated as a fact issue).

### II

Even adopting the majority's view that paragraph 7 must be construed to apply to property of the insured on a premises other than Levittown (even though that property is from the Levittown inventory and is in the custody of an individual named in the Endorsement to paragraph 2E), I still believe that this case should have proceeded to trial.

Under Pennsylvania law, the defendant insurer, when invoking an exclusionary provision in order to disclaim coverage, must bear the burden of proving that the exclusionary clause is applicable to the particular case. See Daburlos v. Commercial Insurance. Co., supra; Weissman v. Prashker, 405 Pa. 226, 175 A.2d 63 (1961). Moreover, "[e]ven where a policy is written in unambiguous terms, the burden of establishing the applicability of an exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him." Hionis v. Northern Mutual Insurance Co., 230 Pa.Super. 511, 516–17, 327 A.2d 363, 365 (1974).

Here, Jefferson Insurance is asserting as a defense to Treasure Craft's action the

exclusionary provision of paragraph 7. Thus, even if paragraph 7 unambiguously applied to deny coverage in this case, it would be incumbent upon the insurer, Jefferson Insurance, to prove that Treasure Craft was aware of the paragraph 7 exclusion, and that the provision's effect—*viz.,* that coverage of Levittown jewelry ceased if an individual named in the endorsement to paragraph 2E, with that Levittown property in his custody, entered another premises of the insured—was explained. I can find no evidence in the record which indicates that Jefferson has undisputedly met this burden. At best, therefore, this question constitutes a disputed issue of material fact, as to which a grant of summary judgment was improper. *See Daburlos v. Commercial Insurance Co., supra.*

The majority seeks to avoid the doctrine of *Daburlos* and *Hionis* by its reading of, and reliance on, *Miller v. Prudential Insurance Co. of America,* 239 Pa.Super. 467, 362 A.2d 1017 (1976). In my opinion, *Miller* is inapposite; the majority's reading of *Miller* is overly generous, and therefore its reliance on *Miller* is completely misplaced. *Miller,* as the majority opinion reflects, involved a major medical insurance policy which by its explicit terms provided for the deductibility of benefits received from other medical insurance before major medical benefits would be paid. The majority opinion properly refers to four distinguishing factors between that situation and the situation presented in *Hionis,* where no such clear cut, unambiguous provisions appeared. However, the majority opinion fails to acknowledge a principal factor in the *Miller* decision, *viz.,* the fact that the plaintiff had already received full compensation for those medical expenses for which he sought a second reimbursement from the defendant insurer. The last paragraph of the *Miller* opinion makes clear the reason why in such a case the court imputed to the insured a knowledge of the "exclusion":

> The appellant's major medical policy on its face covered his medical expenditures. The policy, however, provided for an *exception* to payment if the insured was otherwise reimbursed from other medical insurance policies. Because the appellant has already received full compensation for his medical expenses, it would be inequitable to require Prudential to demonstrate affirmatively that the insured was aware of the exception and had its effect explained to him. Under the circumstances of this case, such knowledge should be imputed to the appellant.

362 A.2d at 1021 (emphasis in original).

In this case, it is undisputed that Treasure Craft has received no reimbursement for its loss from any other source. Thus, even if the initial four factors found in *Miller* could be said to be present in Treasure Craft's case—and in my opinion they are not—the absence here of the determinative factor in *Miller, i. e.* the equities, makes reference to *Miller* completely inappropriate.

### III

For the reasons stated above, I dissent from the majority's affirmance of the judgment in favor of the insurance company. I believe that, under Pennsylvania law, the insurance policy in this case must be construed such that paragraph 2E can cover the stolen jewelry, if it is determined that the jewelry was from the Levittown store and that it was in Donald Bound's custody at the time it was stolen. Since these are genuine issues of material fact, summary judgment was, in my opinion, erroneously granted. *See* part I of this dissenting opinion, *supra.*

Moreover, even accepting the majority's view that paragraph 7 of the policy precludes coverage, I believe that summary judgment should not have been granted since under Pennsylvania law an issue of fact exists as to whether the exclusionary effect of paragraph 5 as applied to this situation had been explained to the plaintiff. *See* part II of this dissenting opinion, *supra.*

Thus, I think that the district court's order granting the defendant's motion for summary judgment should be reversed, and the case remanded so that it may proceed to trial.